## HOLMES *v.* GOLDSMITH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

No. 93. Argued December 14, 15, 1892. — Decided January 9, 1893.

The maker of a promissory note signed it entirely for the benefit of the payee, who was really the party for whose use it was made: The maker and the payee were citizens of the same State. A citizen of another State discounted the note, and paid full consideration for it to the payee, who endorsed it to him. The note not being paid at maturity, the endorsee, who had not parted with it, brought suit upon it against the maker in the Circuit Court of the United States. *Held,* that the court had jurisdiction, notwithstanding the provision in the act of August 13,

Statement of the Case.

1888, 25 Stat. 433, 434, c. 866, that such court shall not have cognizance of a suit to recover the contents of a promissory note in favor of an assignee or subsequent holder, unless such suit might have been prosecuted in such court if no assignment had been made.

When the genuineness of a paper sued on is put in issue, papers not otherwise competent may be introduced in Oregon for the purpose of enabling the jury to make a comparison of handwritings.

A witness who has sworn to the genuineness of a disputed signature to a note, may be further asked if he would act upon it if it came to him in an ordinary business transaction.

The admission of evidence of a collateral fact, which might have been rejected by the trial court without committing error, does not constitute error which will of itself justify reversal of the judgment below; if the case of the plaintiff in error was not injured by it.

This was an action brought by L. Goldsmith and Max Goldsmith, doing business as partners under the name of L. Goldsmith & Co., citizens of the State of New York, against M. B. Holmes, John Dillard and R. Phipps, citizens of the State of Oregon, as makers of a promissory note, in the words and figures following:

"$10,000.                    PORTLAND, OREGON, Aug. 9, 1886.

"Six months after date, without grace, we, or either of us, promise to pay to the order of W. F. Owens ten thousand dollars, for value received, with interest from date at the rate of ten per cent per annum until paid, principal and interest payable in U. S. gold coin, at the first National Bank in Portland, Oregon, and in case suit is instituted to collect this note or any portion thereof, we promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit.

"M. B. HOLMES,
"JOHN DILLARD,
"R. PHIPPS."

On the day of its date, W. F. Owens endorsed the note, waived, in writing, demand, notice and protest, delivered the note, so endorsed, to the agent of the plaintiffs, and received the sum of ten thousand dollars.

The complaint alleged that the transaction was a loan by plaintiffs to W. F. Owens; that the defendants executed the note for the accommodation of Owens, to enable him to procure the loan thereon; and that Owens was, in fact, a maker of said note to the plaintiffs, and never himself had any cause of action thereon against the defendants.

To this complaint the defendants demurred, on the ground that it did not bring the case within the jurisdiction of the Circuit Court, and did not state facts sufficient to constitute a cause of action.

Upon argument this demurrer was overruled. 36 Fed. Rep. 484.

The defendants answered, denying the execution of the note, and knowledge of the other facts alleged in the complaint. At the trial a verdict was given in favor of the plaintiffs for the amount of the note, with interest from date, and on June 19, 1889, judgment was entered on the verdict, in favor of the plaintiffs and against the defendants, for the amount of the note with interest and with costs and disbursements.

A writ of error was duly sued out and allowed, and the case brought into this court for review.

*Mr. John H. Mitchell* for plaintiffs in error.

The first and second assignments of error relate to the jurisdiction of the court : whether the note sued upon comes within the prohibitory provision of the act of August 13, 1888, 25 Stat. 433, c. 866. That provision is as follows:

" Nor shall any Circuit or District Court have cognizance of any suit except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer . . . unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made."

It is scarcely necessary to state the familiar rule that all facts essential to confer jurisdiction on a Federal court must be made to appear affirmatively by material allegations, and

in determining the question of jurisdiction every immaterial averment in a complaint, if any, must be eliminated in its consideration. In other words, as stated by Chief Justice Ellsworth in this court so long ago as *Turner* v. *Bank of North America*, 4 Dall. 8, 11, " The fair presumption is (not as with regard to a court of general jurisdiction that a cause is within its jurisdiction unless the contrary appears, but rather) that a cause is without its jurisdiction till the contrary appears." *Turner* v. *Bank of North America*, 4 Dall. 84. See also *Scott* v. *Sandford*, 19 How. 393 ; *Ex parte Smith*, 94 U. S. 455 ; *King Iron Bridge Co.* v. *Otoe County*, 120 U. S. 225 ; *Hancock* v. *Holbrook*, 112 U. S. 229.

This suit is on a contract or agreement, if such terms may with propriety be applied to a promissory note, in writing, namely a negotiable promissory note, the defendants being the makers ; W. F. Owens, the payee and endorser ; and the plaintiffs endorsees or assignees. Whatever rights might attach to the defendants and the payee to show by parol proof under certain circumstances the relations they bore severally to each other, it is submitted that the plaintiffs are not at liberty for any purpose, much less for the purpose of making a case conferring jurisdiction on the Circuit Court, to either aver in their complaint or prove by parol a state of case different from that presented by the writings. In other words, this is a suit brought in a Circuit Court to recover the contents of a promissory note, by the assignee thereof, which suit, it is manifest, could not have been prosecuted in such court to recover the said contents if no assignment had been made.

While the act of 1888 is more restrictive in its provisions than the judiciary act of September 24, 1789, 1 Stat. 73, 79, c. 20, § 11, the two are substantially similar, so far as they relate to promissory notes other than those payable to bearer. Therefore the judicial construction placed by this court on the act of 1789 is applicable to the act of 1888. *Fisk* v. *Henarie*, 142 U. S. 459.

This clause of the judiciary act of 1789 was interpreted by this court — first by an opinion delivered by Chief Justice Marshall in the case of *Young* v. *Brian*, 6 Wheat. 146, and

the construction then placed upon it was subsequently cited and approved in the following cases: *Mullen* v. *Torrance*, 9 Wheat. 537; *Evans* v. *Gee*, 11 Pet. 80; *Phillips* v. *Preston*, 5 How. 278; *Bank of the United States* v. *Moss*, 6 How. 31; *Coffee* v. *Planters' Bank of Tennessee*, 13 How. 183; *Keary* v. *Farmers' and Mechanics' Bank of Memphis*, 16 Pet. 88. See also *Turner* v. *Bank of North America*, 4 Dall. 8; *Montalet* v. *Murray*, 4 Cranch, 46.

These authorities, and they do not seem to have been overruled, lay down very clearly and without qualification the two following propositions:

1. That under this clause of the judiciary act of 1789, an endorsee of a promissory note may bring a suit in the Circuit Court to recover the contents thereof against the immediate endorser and a citizen of a different State, whether a suit could be brought in such court by such endorser against the maker or not. That in such a case the endorsee does not claim through an assignment. It is a new contract entered into by the endorser and endorsee upon which the suit is brought; and

2. That in a suit brought in a Circuit Court to recover the contents of a promissory note by the endorsee against either the maker or a remote endorser, it is necessary, in order to confer jurisdiction, to aver in the complaint the fact that the payee or promisee named in such note is a citizen of a State other than that of which the maker of the note is a citizen.

The same doctrine is approved in *Morgan's Executor* v. *Gay*, 19 Wall. 81; *King Iron Bridge Co.* v. *Otoe County*, 120 U. S. 225; *Newgass* v. *New Orleans*, 33 Fed. Rep. 196; *Ambler* v. *Eppinger*, 137 U. S. 480; *Metcalf* v. *Watertown*, 128 U. S. 586; *Denny* v. *Pironi*, 141 U. S. 121.

The case at bar, the court will bear in mind, is a suit brought by the endorsees, not against an endorser, either immediate or remote, but against the makers of the note, the payee or endorser not being joined as a party.

In view of the foregoing authorities, this clearly being a suit to recover the contents of a promissory note by the assignees thereof against the makers, and the complaint so far from

averring that the payee in such note was a citizen of a different State from that of the defendant, avers what in law amounts to an averment that he was a citizen of the same State, it is clear that the complaint does not state facts sufficient to confer jurisdiction, and defendants' demurrer should have been sustained.

Owens, the payee in the note, cannot be eliminated from the case by averment and evidence showing him to be a maker of the note and not an endorser. Parol evidence is not admissible to vary the contract of endorsement, or the agreement of the parties as fixed under the law by the fact of endorsement. The same rule which excludes parol evidence to vary the terms or obligations of a written agreement is applicable to the contract of endorsement in blank on a negotiable promissory note where the terms of contract are implied by law. *United States Bank* v. *Dunn,* 6 Pet. U. S. 51; *Specht* v. *Howard,* 16 Wall. 564; *Renner* v. *Bank of Columbia,* 9 Wheat. 581; *Martin* v. *Cole,* 104 U. S. 30.

While it is true that makers and endorsers of promissory notes are permitted under certain circumstances to show by parol the nature of the arrangement as between themselves, to the end that the liability as between themselves may be properly adjusted, either in a suit against some or all of them by the subsequent assignee, it is respectfully submitted that such assignee or last endorsee is not permitted for any purpose to show by parol testimony that the relation that the makers and endorsers of a note hold toward each other or toward him, is other or different from that shown by the writings; and especially must this be so when the sole purpose of such oral showing is to make a case cognizable in a Federal court which in the absence of such showing would have no standing in such a court.

The cases which hold that, as between the parties who execute or endorse the bill, the true relationship may be shown, do not trench in the slightest degree upon the rule that an endorsement cannot be varied by parol evidence at the instance of the endorsee. The right of such parties may be tried between themselves, but the right of the holders cannot

be thereby affected, either at the instance of the endorsee or that of the makers or endorsers. The rights of the former cannot be enlarged in any respect by any parol showing, nor can they be diminished, restricted, or in any manner modified by any showing that the makers or endorsers may be permitted to make for the purpose of establishing the rights respectively as between themselves, which it is conceded they may properly do. *Houston* v. *Bruner*, 39 Indiana, 376; *Stack* v. *Beach*, 74 Indiana, 571; *De Witt* v. *Berry*, 134 U. S. 306, 315.

The proposition of the plaintiff is, to vary the terms of the contract of endorsement. Although the paper is on its face a promissory note in due form, Owens being the payee and subsequent endorser, the plaintiffs, the assignees, propose to show by parol proof that this note when executed by the defendants and as alleged delivered to Owens the payee, gave no rights to the payee, and was to all intents and purposes vain, futile and of no force or effect whatever. This cannot be done. *Burnes* v. *Scott*, 117 U. S. 582.

*Mr. L. B. Cox* for defendants in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The complaint alleges the ownership in the plaintiffs of a chose in action; as to the character, a promissory note; as to amount, ten thousand dollars; as to parties, the plaintiffs, citizens of the State of New York, and the defendants, citizens of the State of Oregon; thus bringing the case within the jurisdiction of a Circuit Court of the United States, as defined in the Constitution.

By the demurrer to the complaint the defendants invoked the provision of the act of August 13, 1888, 25 Stat. 433, 434, c. 866, which is as follows:

"Nor shall any Circuit or District Court have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee or of any subsequent holder, if such

instrument be payable to bearer, . . . unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made."

Upon the face of the complaint, the jurisdiction of the Circuit Court was duly made to appear, so far as the requisitions of the Constitution apply. But it has been held, in a series of cases beginning with *Turner* v. *Bank of North America,* 4 Dall. 8, that it is competent for Congress, in creating a Circuit Court and prescribing the extent of its jurisdiction, to withhold jurisdiction in the case of a particular controversy.

In pursuance of this view it has been frequently held by this court that, in an action in a Circuit Court of the United States, by an assignee of a chose in action, the record must affirmatively show, by apt allegations, that the assignor could have maintained the action. Thus, Mr. Justice Strong, in delivering the opinion of the court, in the case of *Morgan's Executor* v. *Gay,* 19 Wall. 81, 83, said:

"In *Turner* v. *Bank of North America,* 4 Dall. 8, it was distinctly ruled that when an action upon a promissory note is brought in a Federal court by an endorser against the maker, not only the parties to the suit, but also the citizenship of the payee and the endorser, must be averred in the record to be such as to give the court jurisdiction."

In *Sheldon* v. *Sill,* 8 How. 441, 448, it was contended, in favor of the jurisdiction of the Circuit Court, that the provision in the Judiciary Act of 1789, inhibiting a suit by an assignee of a chose in action, in cases where the assignor could not have sued, if no assignment had been made, was invalid, because it attempted to deprive the courts of the United States of the judicial power with which the Constitution had invested them; but this court, speaking through Mr. Justice Grier, said:

"The eleventh section of the Judiciary Act, which defines the jurisdiction of the Circuit Courts, restrains them from taking 'cognizance of any suit to recover the contents of any promissory note, or other chose in action, in favor of an assignee, unless a suit might have been prosecuted in such court to recover the contents, if no assignment had been made, except in cases of foreign bills of exchange.'

"The third article of the Constitution declares that 'the judicial power of the United States shall be vested in one Supreme Court and such inferior courts as the Congress may, from time to time, ordain and establish.' The second section of the same article enumerates the cases and controversies of which the judicial power shall have cognizance, and, among others, it specifies 'contr versies between citizens of different States.'

"It has been alleged that this restriction of the Judiciary Act, with regard to assignees of choses in action, is in conflict with this provision of the Constitution, and therefore void.

"It must be admitted that, if the Constitution had ordained and established the inferior courts, and distributed to them their respective powers, they could not be restricted or divested by Congress. But, as it has made no such distribution, one of two consequences must result — either that each inferior court created by Congress must exercise all the judicial powers not given to the Supreme Court, or that Congress, having the power to establish the courts, must define their respective jurisdictions. The first of these inferences has never been asserted, and could not be defended with any show of reason, and, if not, the latter would seem to follow as a necessary consequence. And it would seem to follow also that, having a right to prescribe, Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies. Courts created by statute can have no jurisdiction but such as the statute confers. No one of them can assert a just claim to jurisdiction exclusively conferred on another, or withheld from all.

"The Constitution has defined the limits of the judicial power of the United States, but has not prescribed how much of it shall be exercised by the Circuit Court; consequently, the statute which does prescribe the limits of their jurisdiction cannot be in conflict with the Constitution, unless it confers powers not enumerated therein."

This doctrine has remained unchallenged, and has been assumed for law in numerous cases, which it is unnecessary to cite, and a similar provision has been inserted in the various

acts defining the jurisdiction of the Circuit Courts, including, as we have seen, the act of August 13, 1888, under which the present action was brought.

Nor are we asked by the defendant in error to disregard those cases, but he contends that, consistently with their doctrine and the provision of the Judiciary Act, he can maintain his action by alleging and proving that the nominal endorser was not really such, but that the note was made by the makers for his accommodation and as his sureties; that he was, in legal effect, a maker of the note; that he received the proceeds of the loan effected through the note, and had no right of action against the nominal makers of the note; and, hence, that he cannot be regarded as an assignor of a right of action against the makers, within the true meaning of the Judiciary Act.

The learned judge who tried the case below adopted the view that where it is necessary, to maintain the jurisdiction of the Circuit Court in an action on a promissory note, to show that the plaintiff, who appears to be an endorsee or assignee, is in point of fact the payee of the note, it may be done, and therefore overruled the demurrer.

Against this view of the case, the plaintiffs in error urge two propositions: first, that it was not competent for the holders of the note to show, by allegation and evidence, that the relation of the parties to the note, as makers and payees, was otherwise than as it appeared to be in the phraseology of the note itself; and, second, that, assuming the plaintiffs' evidence to truly present the facts of the case, yet the plaintiffs were not thereby relieved from the operation of that provision of the law which forbids assignees from maintaining actions to recover the contents of promissory notes. To sustain their first objection, plaintiffs in error cite numerous cases going to show that parol evidence is not admissible to vary the contract of endorsement, or the agreement of the parties as fixed under the law by the fact of endorsement.

Certainly, as against a third party who has become, in good faith, the holder of a promissory note, a defendant, whether a maker or an endorser, will not be permitted to escape from the legal import of his formal contract by an offer of parol evi-

dence. But, as between themselves, it has always been held that evidence showing the real relation of the parties is admissible, because it does not change or vary the contract, but shows what it really was. The defendants' engagement, as to amount and date and place of payment, and every other circumstance connected with it, is left by the evidence just what it appears to be on the face of the note.

In *Brooks* v. *Thacher*, 52 Vermont, 559, where there was a question as to whether a party to a note was principal or surety, Redfield, J., said : " But the real relation of the parties to a written instrument, whether as principal or sureties, may always be shown by parol evidence."

*Harris* v. *Brooks*, 21 Pick. 195, 197, was a suit wherein one of two makers of a note was permitted to show that, though a joint maker in form, he was, in fact, surety for the other maker, and had been released by an agreement of the holder that he would look to the principal; and Shaw, C. J., said : " The fact of such relation, and notice of it to the holder, may, we think, be proved by extrinsic evidence. It is not to affect the terms of the contract, but to prove a collateral fact and rebut a presumption."

If, then, it was satisfactorily shown that Owens, the nominal endorser, was really the party for whose use the note was made, and that the plaintiffs below were the first and only holders of the note for value, the next question is whether, upon that state of facts, they were prevented, by the terms of the Judiciary Act, from maintaining an action in the Circuit Court.

It is quite plain that the plaintiffs' action did not offend the spirit and purpose of this section of the act. The purpose of the restriction as to suits by assignees was to prevent the making of assignments of choses in action for the purpose of giving jurisdiction to the Federal court.

*Bank of Kentucky* v. *Wister*, 2 Pet. 318, 326, was the case of a suit in a Circuit Court of the United States by a holder of a bank bill payable to individuals or bearer, concerning which individuals there was no averment of citizenship, and which, therefore, may have been payable, in the first instance, to parties not competent to sue in the courts of the United

States. But the court held, "this is a question which has been considered and disposed of in our previous decisions. This court has uniformly held that a note payable to bearer is payable to anybody, and not affected by the disabilities of the nominal payee."

In *Bushnell* v. *Kennedy*, 9 Wall. 387, 391, Chief Justice Chase, in delivering the opinion of the court, said: "It may be observed that the denial of jurisdiction of suits by assignees has never been taken in an absolutely literal sense. It has been held that suits upon notes payable to a particular individual or to bearer may be maintained by the holder, without any allegation of citizenship of the original payee; though it is not to be doubted that the holder's title to the note could only be derived through transfer or assignment. So, too, it has been decided, where the assignment was by will, that the restriction is not applicable to the representative of the decedent. And it has also been determined that the assignee of a *chose in action* may maintain a suit in the Circuit Court to recover possession of the specific thing, or damages for its wrongful caption or detention, though the court would have no jurisdiction of the suit if brought by the assignors."

We do not overlook the fact that, since the foregoing cases were determined, Congress has, in the more recent Judiciary acts, still further restricted the jurisdiction of the Circuit Courts by including in the prohibitory clause the case of promissory notes payable to bearer.

But the reasoning remains applicable in so far as they hold that the language of the statute is to be interpreted by the purpose to be effected and the mischief to be prevented.

We think that the jurisdiction of the Circuit Court, in the case before us, was properly put by the court below upon the proposition that the true meaning of the restriction in question was not disturbed by permitting the plaintiffs to show that, notwithstanding the terms of the note, the payee was really a maker or original promisor, and did not, by his endorsement, assign or transfer any right of action held by him against the accommodation makers.

The jurisdiction of the court having been established, and

an issue having been made as to the execution of the note, several questions arose during the progress of the trial, which are brought up for our consideration by bills of exceptions.

The second, third, fourth and fifth assignments allege error in the action of the court in permitting one H. Abraham to testify as to what were the relations between the defendants and W. F. Owens, and as to what Owens wanted to do with the money he borrowed on the note in suit.

It was not claimed by the plaintiffs that the evidence objected to was needed to create an obligation on the part of the defendants to pay the note. That obligation arose directly from the terms of the note, and, if the execution of the note had not been denied, the testimony of Abraham would not have been necessary.

But in view of the nature of the controversy before the jury, putting in issue the execution of the note sued on, we agree with the trial court in regarding the evidence as admissible. While each one of the facts so elicited was, when regarded singly, of small importance, yet, taken together, they were worthy of consideration, and we do not perceive that any rule of evidence was violated in submitting them to the jury.

It is argued that there was error in admitting statements by the witness Abraham, as to the contents of the letters that had passed between him and Owens, without producing the letters, or accounting for their absence. But the record does not disclose that any specific objection was made to the evidence for that reason, though objection was made generally to the admission of any conversation between the witness and Owens, which was not had in the presence of the defendants, as incompetent and irrelevant. But the force of this is broken by the observation that what passed between the witness and Owens, whether in conversation or in letters, was of matters that happened prior to the making of the note, and was admitted only to show the relations of the parties and the circumstances in which the note was made.

In view of the fact, disclosed by the record, of the death of Owens before the trial, and the consequent necessity of resorting to circumstantial evidence, we think the rules on this sub-

ject were not unduly relaxed in permitting a full disclosure of the *res gestœ*.

There are several additional assignments of error, which involve the action of the court in admitting evidence bearing on the question of the execution of the note in suit.

So far as such assignments present the vexed subject of the introduction into a cause of papers, not otherwise competent, for the purpose of enabling the jury to make a comparison of handwriting, we are relieved from discussion by the existence of an Oregon statute, which provides that "evidence respecting the handwriting may also be given by a comparison, made by a witness skilled in such matters, or the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered." 1 Hill's Ann. Laws of Oregon, § 765. We regard this statute as constituting the law of the case, and as warranting the action of the court in the particulars complained of.

The seventh assignment avers error in permitting several witnesses to testify as to whether they would act upon the signatures of the defendants attached to the note sued on if they came to them in an ordinary business transaction. Such a question standing alone might be objectionable, but the record discloses that each of these witnesses had testified to his acquaintance with the handwriting of one or more of the defendants, and to his belief of the genuineness of the signatures of the parties with whose handwriting he was acquainted; and, as a means of showing the strength and value of the witnesses' opinions, the question put was allowable.

We have more difficulty in disposing of the errors assigned in the ninth, tenth, eleventh and twelfth specifications. Two letters of Owens, the nominal payee of the note, who was not a party to the suit, were admitted in evidence, and Edward Failing, an expert witness, was asked to state whether, judging from the letters produced, he believed that Owens could have forged the names upon the note in dispute so as to correspond so nearly with the names upon the comparison papers. Certain stub certificates were admitted in evidence, and George W. Jones testified that his name thereon written was his sig-

nature, and thereupon the expert was asked whether or not, in his opinion, the name of Jones so written would be an easier name to counterfeit than that of M. B. Holmes. That the ordinary handwriting of Owens, as shown in his letters, was such as to convince an expert that he was not able to successfully imitate the signatures of other persons, may have been entitled to some weight. That Owens could, in the opinion of the expert, have as readily counterfeited the handwriting of Jones as that of the defendant Holmes, seems to be fanciful and entitled to little or no weight. If these offers had been rejected by the court, such rejection could not have been successfully assigned as error. Still we cannot perceive that the case of the defendants was injured by the admission of this trifling evidence. As has been frequently said, great latitude is allowed in the reception of circumstantial evidence, the aid of which is constantly required, and, therefore, where direct evidence of the fact is wanting, the more the jury can see of the surrounding facts and circumstances the more correct their judgment is likely to be. "The competency of a collateral fact to be used as the basis of legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth." *Stevenson* v. *Stewart*, 11 Penn. St. 307.

The modern tendency, both of legislation and of the decision of courts, is to give as wide a scope as possible to the investigation of facts. Courts of error are specially unwilling to reverse cases because unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has been thereby caused.

These observations seem to sufficiently dispose of the errors assigned, and the judgment of the court below is accordingly

*Affirmed.*