# BURKE *v.* CLAUGHTON.

### PLEADING AND PRACTICE; INTEREST.

1. Under the common counts in assumpsit and a plea of the general
   issue interposed as a defence thereto, it is proper to prove both
   a special contract and a *quantum meruit.*
2. Objectionable and inadmissible testimony which does not mislead
   the jury will not be permitted to disturb a verdict, otherwise
   free from irregularity.
3. Pertinent and relevant testimony should not be excluded because
   the question which elicited it was not properly framed, and
   may in itself have been objectionable, unless it plainly appears
   that injustice was thereby done to the other party by way of a
   surprise upon him, or otherwise.
4. Whether a claim be upon an express contract or a *quantum meruit,*
   interest is properly allowable from the time the claim became
   due and payable.

No. 725. Submitted January 6, 1898. Decided February 8, 1898.

HEARING on an appeal by the defendant from a judgment
on verdict in an action of assumpsit. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Nathaniel Wilson* and *Mr. George A. Mushback* for the
appellant.

*Mr. Franklin H. Mackey* and *Mr. S. F. Phillips* for the
appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This case has been before us on a former appeal (6 App.
D. C. 350), and the principal facts in the controversy be-
tween the parties were stated in the opinion then rendered,
and need not here be repeated. The new trial then ordered
has been had, with the result that there has been a second
verdict in favor of the plaintiff for the sum of $1,911, the
same sum as on the first trial, but with interest thereon
only from February 7, 1888, which we held was the earliest

date from which interest could be allowed. Upon this verdict judgment has been entered, from which the defendant has appealed. Pending the appeal, the plaintiff departed this life, and his administrator has been made party to the cause.

The declaration in the case contained only the common counts in assumpsit, in which the amount claimed was stated to be the sum of $3,348.45, with interest thereon from February 5, 1887, and to which there was a bill of particulars annexed, as also an affidavit, intended to be the basis of summary judgment under the rules of the court below in the absence of a sufficient showing of defence. Such showing having been made, this affidavit, as well as the counter-affidavit of the defendant, passed out of the case.

From the amount of the claim, as originally stated by the plaintiff, he afterwards eliminated various items, by which it was reduced to $2,026.43; and at the trial it seems to have been agreed between the parties, or their counsel, that the amount to which the plaintiff would be entitled, if his suit should prevail, would be $1,911, without reference to the interest. And this is the amount for which the verdict was rendered.

The defendant pleaded the general issue and seven special pleas, four of which have dropped out of the case in consequence of the elimination by the plaintiff of the several items in his bill of particulars to which they were addressed. Of the remaining three special pleas, one is merely a form of the general issue, and therefore equivalent to the first and principal plea; and the other two are an admission of indebtedness to the amount of $544.50, and a tender of payment of that amount, which the plaintiff refused to accept, and which sum, it seems, was then paid by the defendant into the registry of the court.

As appears from the record in the cause, as well as from the statement of the case upon the former appeal, the controversy between the parties arose out of the professional

employment of the deceased, Hierome O. Claughton, by the appellant and others to maintain the rights claimed by them, under certain coupon bonds issued by Clarke County, in the State of Virginia, the validity of which was contested. The contract between them for the compensation of the plaintiff, according to a memorandum thereof in writing produced by the plaintiff upon the trial, contemplated the payment to him of 10 per centum "on the amount of the judgment;" and this, according to the memorandum, was to be in payment for the services to be rendered by him in "collecting the interest due or to become due, as well as to fix the liability of future payments of Clarke interest and principal of bonds through the Virginia Court of Appeals, or United States courts."

At the trial, the plaintiff gave testimony tending to prove the special agreement and how it was understood by the parties; and he also adduced testimony tending to show that he had performed the services agreed upon between them.  Thereupon he was permitted to adduce also the testimony of two members of the bar of the State of Virginia, who had been connected with the litigation in regard to the Clark County bonds, adversely to the plaintiff, the purpose of which testimony was to show the value of the plaintiff's services as upon a *quantum meruit*.  These gentlemen were Mr. Robert T. Barton and Mr. Holmes Conrad, the latter being at the time at which he testified the Solicitor General of the United States.

The testimony of Mr. Barton was admitted without objection by the defendant, and it was to the effect "that he was personally cognizant of the professional services rendered in the said suit by the plaintiff, and that he considered that a sum equal to 10 per centum of the principal and interest on the bonds owned by the defendant nothing more than a fair and reasonable compensation to the plaintiff for the professional services rendered by him to the defendant in said litigation."  But to the testimony of Mr. Conrad on

the same point objection was duly interposed, which was overruled. The testimony thus objected to is contained in the following questions and answers:

" Q. What would you consider to be a reasonable compensation to an attorney for arguing these cases, conducting them and representing the interests of his clients where the fee was contingent on the result, the question involved being the validity of the bonds and the payment of interest upon which were sought to be enforced in these suits?

" A. That would depend altogether upon the amount of the interest the counsel represented. A man who represented one bond of $500 could not expect the same fee that a man would receive who represented $50,000 in bonds. I do not know what interest Claughton represented in the case.

" Q. Suppose that the party represented in that suit was the owner of $20,000 in bonds or an amount in that neighborhood ?

" A. Of course, I can only speak of the tariff of charges that obtains in that part of the country, in Virginia. The general rule there since I have been at the bar has been that where there was no contract for a specific fee on a claim put into the hands of counsel for collection, the usual commission was five per cent. if it was collected without suit, and if there was a suit it was ten per cent. I can only speak of the matter of commission. Of course, I can not testify as to the amount of fee that Mr. Claughton was entitled to, for I have no idea of the amount of labor to which his client's interests subjected him.

" Q. I will ask you whether or not you would consider 10 per cent. upon the principal and interest collected for a party to be a reasonable compensation for an attorney, the fee being contingent?

" A. I would consider ten per cent. on the amount of any interest that counsel had in that case as reasonable compensation—very reasonable compensation."

To the ruling of the trial court in the admission of the testimony there was an exception reserved by the defendant; and error is now assigned upon that exception. Error is also assigned upon an exception taken by the defendant to an instruction given to the jury on behalf of the plaintiff, which was based on the testimony of Messrs. Barton and Conrad, and which was as follows:

"If from all the evidence you find there was no contract or agreement, and that the plaintiff did the work, performed the services detailed, and the defendant knew it and accepted the services, then, on behalf the plaintiff, the court instructs you:

"If the jury shall believe from the evidence that the only contract which governs the relations of the plaintiff and the defendant in connection with the Cazenove suit was one by which the latter is to be understood, from his conduct, to have agreed to pay the plaintiff such compensation for his services in that suit as the latter were reasonably worth to him, and shall also believe the testimony of the witnesses Barton and Conrad to the effect that these services were worth a compensation of 10 per cent. upon the amount of the principal and interest of the plaintiff's (?) bonds respectively secured or collected by the decree in such suit, then their verdict will be for such amount—that is, $1,911—and to that amount the jury will add interest at 6 per cent, from the date of that decree, viz., February 7, 1888."

There were other instructions also requested by both parties, and granted; but no complaint is here made of any of them.

It may be added that it seems to have been established at the trial, or agreed upon by the parties or their counsel, that the whole amount of the principal and interest owned by the defendant, and upon which the plaintiff claimed a commission of ten per centum, was $19,110; that of this amount only the sum of $5,445, which was accrued or overdue interest, had been collected by the defendant at the time of the

institution of the suit (January 2, 1890); that the principal of the bonds, amounting to $12,500, was not due and was not paid until August, 1892, a year and seven months or upwards after the institution of the suit; and that two years' interest also became due and was paid after the suit had been begun.

As is quite apparent, the main controversy between the parties was whether the plaintiff became entitled to his whole compensation upon the rendition of the decree in the courts of Virginia, whereby the validity of the defendant's bonds was established, such compensation to be calculated upon the whole principal and interest then outstanding, which was the theory of the plaintiff; or whether his right to compensation accrued only as the bonds, principal or interest, were collected, which was the thory of defendant, in pursuance of which he had tendered to the plaintiff before the commencement of the suit the sum of $544.50, as the commission on the amount then actually collected. This main issue the verdict of the jury has determined in favor of the plaintiff; and upon the assumption that the alleged special agreement between the parties was sufficiently established by the testimony, it would appear that the defendant makes no complaint of that determination. The complaint is as to the theory of a *quantum meruit* introduced by the testimony of Messrs. Barton and Conrad, and the instruction on behalf of the plaintiff based thereon.

That it is proper, under the common counts in assumpsit and the plea of the general issue interposed as a defence thereto, to prove both a special contract and a *quantum meruit*, does not seem to be controverted by the appellant; and it may be regarded as an elementary rule of practice that a plaintiff is entitled to introduce such proof. But the contention here is that the testimony of Mr. Conrad in regard to the *quantum meruit* was inadmissible because there were no facts in the case that made it relevant, inasmuch as the plaintiff had not collected and the defendant had not

received at the time of the institution of the suit any sum of
money on which the plaintiff was entitled to a reasonable
compensation. But this argument seems to us to be based
upon erroneous premises. If it is necessary that the plain-
tiff himself must make the collection in order to be entitled
to his compensation, it will always be in the power of the
defendant to defeat his right to compensation by making
the collection himself. No such contention can reasonably
be maintained. If it could be, it would destroy all ground
for suit under such circumstances. It is undoubtedly the
law, that when compensation is based upon collection, and
such collection is secured by the professional services of
counsel, the counsel becomes entitled to his compensation
when that collection is actually made, whether that collec-
tion actually be by counsel or by the client.

But the plaintiff's claim in this case was not based upon
the theory of actual collection of money either by himself
or by his client. His claim was that, on the day of the
rendition of a certain judgment or decree in one of the courts
of Virginia, he became entitled to compensation from the
defendant for professional services theretofore rendered and
then brought to a successful termination, the amount of
which compensation had not been estimated by the parties
in any specific sum of money, but was to be determined
either by calculation of a percentage upon the bonds and
coupons then outstanding, if there was a special contract to
that effect, or upon a *quantum meruit*, if there was no special
contract. Upon the plaintiff's theory, his compensation be-
came due and payable on the day specified without any
reference whatever to any subsequent collection either by
himself or his client; and it could have been determined on
that day, as well as at any subsequent date. The outstand-
ing bonds and coupons merely served as a basis for the
calculation of the amount of it.

Now, it may be that, with reference to this theory, the
questions propounded to Mr. Conrad and his answers thereto

are not beyond verbal criticism.   The first question and answer certainly could not have harmed the defendant ; for they are not conclusive of anything.   The second answer has scarcely any greater significance; although it would seem to be addressed to the question of compensation for the actual collection of money.   How the statement of the usage, however, in this regard, could have injured the defendant is not apparent; inasmuch as there was an actual collection of money by the defendant before the institution of the suit, to which it is conceded that the plaintiff was entitled to a commission as compensation for his services ; and the usage, as stated by Mr. Conrad, if understood as applicable merely to actual collections of money, is in precise accordance to the defendant's theory, and therefore could not have injured him.   But it is the third question and answer upon which most stress is laid in the argument for the appellant.

By the third question the witness was asked to give his opinion whether ten per centum upon the principal and interest collected for a party was not a reasonable compensation to the attorney, the fee being contingent.   And the witness, in answer to the question, stated that he would consider ten per centum on the amount of any interest that counsel had in the case a very reasonable compensation.   Now it is very true that in this case there had been no collection whatever of any amount by the plaintiff for the defendant; the actual collection, after the right had been established, had been made by the defendant himself; and there is nothing to show that the defendant did not expect to make this actual collection himself.   The question, therefore, when strictly considered, is undoubtedly inaccurate.   And it is also true that the answer of the witness went somewhat beyond the question, when so considered, and ignored the matter of actual collection.   But it is very plain to us that the jury could not have been misled by this.   It was conceded throughout the whole case that the defendant him-

self, and not the plaintiff, had made the collection.   The claim of the plaintiff was for compensation for the professional services leading up to the decree which established the rights of the defendant, and which enabled the defendant to make the collection for himself which he had been prevented from making by the contest over the alleged invalidity of the bonds.   The witness evidently understood that the collection referred to in the question was not actual collection, but the establishment of the validity of the bonds so that the principal and interest upon them might be collected as they became due; and there is no good reason to suppose that the jury did not understand it in the same way.   While, therefore, there was verbal inaccuracy in the question propounded, we can not suppose that it was misunderstood by the jury, or that the jury was misled.   And it is well settled that even objectionable and inadmissible testimony, which does not mislead the jury, should not be permitted to disturb a verdict otherwise free from irregularity.   *Union Consol. Silver Mining Co.* v. *Taylor*, 100 U. S. 37; *Holmes* v. *Goldsmith*, 147 U. S. 150, 164.   In the case last cited, of *Holmes* v. *Goldsmith*, Mr. Justice Shiras, speaking for the Supreme Court of the United States, said: "Courts of error are especially unwilling to reverse cases because unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has been thereby caused."   And we are disposed to think that this statement is peculiarly applicable to the present case; since it is practically conceded by the defendant that the plaintiff is now, at all events, even if he was not at the commencement of the suit, entitled to the whole amount of his claim, as ultimately stated by him, namely, the sum of $1,911, the sum of $19,110 having been received and collected by him, and the only objection to the allowance of the whole amount being that, as to part of it, on the defendant's theory, the suit was prematurely brought.

The testimony of Mr. Conrad was not irrelevant.   On the

contrary, it was plainly pertinent to the issue, and tended
to sustain the plaintiff's theory of the case. The only plaus-
ible objection to it is that it was not strictly responsive to
the question upon a strict construction of the meaning of
that question. But pertinent and relevant testimony should
not be excluded because the question which elicited it was
not properly framed, and may in itself have been objection-
able, unless it plainly appears that injustice was thereby
done to the other party by the way of a surprise upon him
or otherwise.

What we have said in regard to the assignment of error
based upon the admission of Mr. Conrad's testimony, will
serve also to dispose of the question relative to the instruc-
tion given by the court which was based upon that testi-
mony and the testimony of Mr. Barton. If the testimony
was proper, the instruction was undoubtedly proper; for
it does not go beyond the testimony. The instruction
might have been based upon the testimony of Mr. Barton
alone, which was admitted without objection on the part of
the defendant. But its reference to the testimony of Mr.
Conrad also does not invalidate it, since it was to the same
effect, and was not, as we have seen, inadmissible.

The only other question that remains to be considered is
that of the allowance of interest on the plaintiff's claim from
the 7th of February, 1888, the date of the final decree in
the Virginia courts that established the defendant's rights.
But if the plaintiff's theory was the correct one, that he be-
came entitled to his fee upon the rendition of the decree
referred to, and the jury have so held, then undoubtedly he
was entitled to interest upon it from that date; for thereafter
it was wrongly withheld from him. And this result follows,
whether the compensation be in pursuance of express con-
tract or based upon a *quantum meruit.* The instructions
given by the trial court with regard to the assumption that
there was an express contract between the parties, contain
a similar direction in regard to the allowance of interest;

and these were permitted by the appellant to pass unchallenged.   There is no greater reason for the refusal of interest, or for any different rule in regard to it, upon a *quantum meruit* than upon an express contract.   Interest is proper in either case from the time when the compensation became due and payable.   The trial court, therefore, was justified in instructing the jury that, if they found in favor of the plaintiff's contention, they should allow him interest also, as well as the principal sum to which they should find him entitled; and there was no question in that event as to the time from which such interest should be allowed.

On the whole, we find no error in the record; and we must *affirm the judgment appealed from, with costs.   And it is so ordered.*