Joseph Sinopoli, Appellee, v. Chicago Railways Company and the Chicago City Railway Company, which with the Calumet and South Chicago Railway Company and Southern Street Railway Company are Trading as Chicago Surface Lines, Appellants.

Gen. No. 28,459.

1. APPEAL AND ERROR—*apparent right of conflicting evidence against verdict as ground for reversal.* Where there is a contrariety of evidence and the testimony, by fair and reasonable intendment, will authorize the verdict, even though it may be against the apparent weight of the evidence, a reviewing court will not set it aside.

2. APPEAL AND ERROR—*doubtfulness of evidence as ground for reversal.* A verdict will not be disturbed merely because the evidence is doubtful.

3. CARRIERS—*sufficiency of evidence of negligence of street railway company as to alighting passenger.* In an action for damages received by plaintiff in a fall as he was alighting from defendant's street car, where plaintiff contended that the car stopped and then started suddenly as he was alighting and defendants contended that plaintiff attempted to alight before the car stopped, held, that, from a consideration of all the evidence it cannot be said that the verdict for plaintiff was manifestly against the weight of the evidence.

4. CARRIERS—*purpose for which street car company's operating rules admissible in negligence case by passenger.* Where the negligence alleged by plaintiff in an action for injuries received in alighting from a street car was a sudden starting of the car after it had stopped and plaintiff was in the act of alighting a rule of the street railway company prohibiting a motorman from opening the front door while the car is in motion was not admissible to show negligence in the opening of the car door.

5. CARRIERS—*admissibility of street car company's operating rule as bearing on credibility of witnesses in passenger's negligence case.* In an action for damages for injuries received by plaintiff in alighting from defendants' street car where the testimony on behalf of plaintiff was that, after the car stopped and while plaintiff was alighting from the front door, the car was suddenly started, throwing plaintiff; while that for defendants tended to show that, at plaintiff's request, the motorman opened the door and plaintiff attempted to alight before the car stopped, a rule of the company

prohibiting motormen from opening the front door before the car stops was admissible as bearing upon the credibility of the witnesses.

6. CARRIERS—*instruction as to duty of street car company towards alighting passengers.* In an action for damages against a street railway company where the declaration alleged that plaintiff was a passenger upon defendants' car and that he was injured by reason of the negligence of defendants, an instruction "that it is the duty of a common carrier of passengers to exercise the highest degree of care reasonably consistent with the mode of conveyance adopted and the practical operation of the road, to secure the safety of its passengers," correctly stated the law and was properly given.

MR. JUSTICE MCSURELY, dissenting.

Appeal by defendant from the Circuit Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1923. Affirmed. Opinion filed June 30, 1924.

CHARLES LEROY BROWN, for appellants; JOHN R. GUILLIAMS, FRANK L. KRIETE and JOSEPH D. RYAN, of counsel.

FINN & MILLER, for appellee.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an appeal by the defendants, the Chicago Railways Company and the Chicago City Railway Company, from a judgment of $2,500 rendered by the Circuit Court of Cook county in favor of the plaintiff, Joseph Sinopoli, in an action brought by the plaintiff for damages for injuries alleged to have been received by reason of the negligent operation of a street car of the defendants. The substance of the declaration is that the plaintiff was a passenger on a street car of the defendants on Halsted Street, in the City of Chicago, and that in attempting to alight from the car while it was standing still near 39th Street to allow passengers to alight, the defendants negligently and carelessly started the car whereby the plaintiff

was thrown from the car and was injured. The contention of the defendants, as stated by counsel for the defendants, is as follows: ''The theory of the defendants is that when the car was a short distance north of 39th street, plaintiff asked the motorman to let him off so that he could catch a 39th street car then rounding the curve from Halsted street eastward into 39th street; that the motorman pulled the door open; that this was at a point about 20 to 25 feet from 39th street; that while the car ran along 8 or 10 feet plaintiff stood by the open door waiting to get off; that when the car's speed was reduced to three or four miles an hour and when it was still a very short distance north of its usual stopping place he went out upon the front step and hastily alighted and fell; and that the car then ran about 3 feet beyond him and came to a stop.''

The defendants ask for a reversal of the judgment on the following grounds: That the verdict is contrary to the evidence; that the trial court committed reversible error in admitting in evidence on behalf of the plaintiff a rule of the defendants providing that the front exit door of the defendants' car should not be opened until the car had stopped; that the trial court erred in giving an instruction requested by the plaintiff.

On the principal issues of fact the evidence is conflicting. The plaintiff and two eye-witnesses in his behalf, Charles Gringer and John Mieorina, testified that the car had stopped when the plaintiff attempted to alight. In behalf of the defendants the motorman, William Miller, and one eye-witness, Louis Calendo, testified that the car had not stopped when the plaintiff attempted to alight.

The plaintiff testified substantially that he boarded the car, which was a Halsted street car, with the intention of getting off at 39th Street, and then walking three blocks east to the place where he worked, which was on Lowe Avenue; that he had a transfer but did

not intend to use it to ride east on the 39th Street car; that when the Halsted Street car was about at 35th Street he went to the front platform of the car and asked the motorman to let him off at 39th Street; that the car stopped at 39th Street and the motorman opened the door; that he, the plaintiff, started to alight; that he took hold of the bar with his left hand and stepped out facing towards the west sidewalk; that the car was still standing at a complete stop when he got both feet onto the step; that as he was reaching out with his right foot, his left foot being on the step, the car started and he was thrown to the ground; that he fell on his back and was facing north when he fell.

Charles Gringer testified that he was riding on the front platform of the car; that he saw the plaintiff come to the front platform when the car was about four or five blocks from 39th Street; that when the car reached 39th Street the motorman stopped the car and opened the door; that as the plaintiff got down on the step the car started with a jerk and the plaintiff fell. Gringer also testified that the plaintiff was the only person to get off; that there was nobody right behind him to get off. Later in his testimony Gringer testified that he was not sure whether there was anybody behind the plaintiff, and that he did not remember whether there was anybody to get off besides the plaintiff.

John Mieorina testified that he saw the plaintiff on the front platform of the car before the accident; that the plaintiff was a friend of his, and he was talking with the plaintiff; that when the car reached 39th Street the plaintiff went over to the door; that the motorman opened the door; that as the plaintiff was getting off, and while one of his feet was on the step and the other "up in the air," the motorman "jerked the car" and the plaintiff fell; that he, the witness, was also jerked but was not thrown off the car.

William Miller, the motorman, testified that "when

we came up—was coming up near 39th street after we had crossed the track there, going into the yards, this man came, or somebody came out, and said, 'Let me off until I catch that car'—there was a 39th street car rounding the curve about the same time I was pulling up there, and he rushed out of the door in a hurry''; that he, the motorman, pulled open the door while the car was coming to a stop but still moving—going about three or four miles an hour; that the car had almost come to a stop when "this man rushed out to get off— and I don't know how it happened, but he fell;" that the car went about 2 or 3 feet possibly after he fell; that he was lying just opposite the door with his head southwest. The motorman testified further that there were about 4 or 5 people on the front platform; that he could not say "for sure" how long they had been on the platform; that when somebody rushed out and said, "Let me off, I want to get that car," or words to that effect, he, the motorman, opened the door and kept looking straight ahead; that he didn't look back; that he could see alongside of the door; that he couldn't say "for sure" how many got off—about 3 or 4, got off at the front door. "Q. Then after three or four had gotten off—they got off while the car was moving, didn't they? A. How? Q. While the car was running, those three or four people got off while the car was running? A. No, sir. Q. How many people got off while the car was moving? A. Well, I would say there was two or three. Q. Got off while the car was moving? A. While the car was moving? Q. Yes. A. No, sir. Q. How many got off while the car was moving? A. There would be only one. Q. Are you sure of that? A. Yes, sir. Q. Did you watch him getting off? A. The first man that got off. Q. You watched him, did you? A. Yes, sir.''

The motorman further testified that the first man got off within a couple of feet or so of the usual stop-

ping place; that he, the motorman, opened the door 8 or 10 feet farther back and that the door remained open for 8 or 10 feet before any one attempted to get out; that he, the motorman, was watching the door during that time, and that no one jumped off; that no one jumped off until the car was "coming practically to a stop, just to a stop—you might say the car was barely moving."

Louis Calendo testified that he was riding on the front platform of the car; that he didn't hear any conversation between the motorman and the plaintiff; that he was not paying any attention as to whether the plaintiff said anything to the motorman or not; that when the man ahead of him got off of the car the man fell down; that the man got off before the car had stopped; that the door was open and the man got off; that the car was moving at the rate of about 3 or 4 miles an hour when the man got off and fell; that he was looking at the man when the man got hurt; that when the man got off he, the witness, got off too; that he, the witness, didn't notice that the car jerked; that the car didn't stop when "we got off"; that he is not certain whether the car had stopped when he, the witness, got off; that the car was pretty nearly stopped or maybe it was stopped; that he didn't pay attention as he was in a hurry to help the man; that he, the witness, was right in back of the man so he, the witness, could see him when he, the man, stepped onto the street.

It will be perceived that the evidence on the controlling questions of fact is conflicting. The rule is a familiar one, and has been announced in many cases, "that where there is a contrariety of evidence and the testimony by fair and reasonable intendment will authorize the verdict, even though it may be against the apparent weight of the evidence, a reviewing court will not set it aside." *Carney v. Sheedy,* 295 Ill. 78, 83. It is also the rule that a verdict will not be disturbed

merely because the evidence is doubtful. *Illinois Central Railroad Company v. Cowles,* 32 Ill. 116, 121; *De Forrest v. Oder,* 42 Ill. 500, 501.

From a consideration of all of the evidence we are of the opinion that the verdict of the jury is not manifestly against the weight of the evidence.

Counsel for the defendants assert that there are "many discrepancies, inconsistencies, and contradictions" in the testimony of the witnesses for the plaintiff. That is true, but the same may be said of the testimony of the defendants' witnesses, particularly the motorman. Moreover, the motorman is not corroborated in his testimony that the "man or somebody" said to him, "Let me off, I want to catch a car." Calendo, the only other eye-witness for the defendants besides the motorman, testified that he, Calendo, did not know whether anybody asked to have the door opened or not.

Counsel for the defendants maintain with confidence that the judgment should be reversed because of the admission, on behalf of the plaintiff, of the rule of the defendants which provided that "the front exit door on payee cars must not be opened until car has stopped, and will be closed before the car starts."

Counsel for the defendants contend that the plaintiff can recover only on the ground of the negligence alleged in the declaration; and that the negligence alleged in the declaration is that, after having stopped the car and while the plaintiff was attempting to alight, the defendants suddenly started the car with a jerk, which caused the plaintiff to fall. Counsel for the defendants further contend that the "plaintiff and his witnesses testified that the door of the front platform was opened after the car had come to a stop, that plaintiff then wholly left the front platform and went upon the step, and that thereupon the car was negligently started so as to throw plaintiff to the ground." The conclusion of counsel for the defendants is that

"manifestly, under those allegations and those proofs, the opening of the door and the closing of the door had nothing whatever to do with plaintiff's injury." We are of the opinion that the contentions of counsel for the defendants are correct.

Counsel for the defendants state that they "make no contention that, in an appropriate case, rules are not competent as evidence, or that such rules must be pleaded in order to be admissible." The case of *Lake Shore & Michigan S. Ry. Co. v. Ward*, 135 Ill. 511, is cited by counsel for the defendants as the leading case in Illinois which announces the general principle on which such rules are admitted in evidence. In that case the rule admitted was as follows:

"9. When passenger trains are at stations or street crossings, receiving or discharging passengers, other trains or engines must not, under any circumstances, pass between the standing train and station, or until the track is known to be clear. Engineers and trainmen will look out for local and dummy trains, of both roads, that stop at street crossings between Englewood and Chicago."

In holding that the rule was admissible the court said (pp. 517-518):

"The objection to the admission of this rule seems to be founded upon the theory that the plaintiff in some way sought to base her right of action upon its violation, and that before she could be permitted to do so, she should have specially set out and pleaded the rule in her declaration. This we think is a misapprehension. The allegations of negligence upon which the plaintiff based her right to recover were, that the defendant, by its servants, carelessly and improperly drove and managed its locomotive engine, and that the defendant was negligent in not providing proper and suitable platforms and railings for the safety of passengers at the crossing or point where the injury was inflicted. The rule was admitted in evidence, not for the purpose of founding a substantive cause of action upon its breach, but as tending, with the other evi-

dence in the case, to show negligence in driving and managing said engine. It was in the nature of an admission by said railway companies that due care in the running and management of their engines and trains at stations and street crossings where passenger trains were receiving and discharging passengers, required the course of conduct prescribed by the rule. In that view it was clearly admissible.''

It is the contention of counsel for defendants that on the principle announced in the case of *Lake Shore & Michigan S. Ry. Co. v. Ward, supra,* the rule in the case at bar was not admissible as a fact or circumstance relevant to the question whether the defendants were negligent. We think that the conclusion of counsel for the defendants is correct.

Counsel for the defendants further assert that ''no possible authority can be cited to sustain the admission in evidence of the rule on the ground that it bore upon the credibility of defendants' witnesses.'' With this contention of counsel for the defendants we disagree. The rule is well established that ''whenever there is a conflict in the evidence relevant to the issue, evidence of collateral facts which have a direct tendency to show that the evidence of the one side is more reasonable and, therefore, *more credible* than that of the opposite side is admissible.'' *Standard Brewery v. Healy,* 209 Ill. App. 272, 276. To the same effect are the following cases: *Glassberg v. Olson,* 89 Minn. 195, 197; *Dodge v. Weill,* 158 N. Y. 346, 350. A considerable discretion must be allowed to the trial judge in applying the rule. *Glassberg v. Olson, supra.* The general rule in regard to the admission of collateral facts is that they are admissible whenever they have a direct logical tendency to shed real light on the question in issue. *Cochrane v. West Duluth Industrial Construction & Improvement Company,* 64 Minn. 369, 370; *Holmes v. Goldsmith,* 147 U. S. 150, 164. Relevancy does not depend upon the conclusiveness of the testimony offered, but upon its legitimate tendency to

establish a controverted fact. *Interstate Commerce Commission v. Baird,* 194 U. S. 25, 44; *Holmes v. Goldsmith, supra.* "It is enough if the testimony may tend, even in a slight degree, to elucidate the inquiry or to assist, though remotely, to a determination probably founded in truth." *Williamson v. United States,* 207 U. S. 425, 451; *Wood v. Finson,* 91 Me. 280, 284. "It is well settled that if the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury." *Insurance Company v. Weide,* 78 U. S. (11 Wall.) 438, 440. "The modern tendency, both of legislation and of the decisions of courts, is to give as wide a scope as possible to the investigation of facts." *Holmes v. Goldsmith, supra; Williamson v. United States, supra.*

Applying the principles announced in the foregoing decisions, to the question in controversy, we are of the opinion that the trial court properly admitted the rule in evidence. The rule is relevant to the issue whether the motorman opened the door while the car was moving or whether he waited until the car had stopped before opening the door. On this issue the testimony is conflicting. The testimony on behalf of the defendants is that the motorman opened the door while the car was moving, and that the plaintiff attempted to get off the car while it was moving. The testimony on behalf of the plaintiff is that the motorman did not open the door until the car had stopped, and that the plaintiff did not start to get off the car while it was moving. If the testimony in behalf of the defendants is true, the motorman violated the rule in opening the door before the car had stopped. If the testimony in behalf of the plaintiff is true, the motorman did not violate the rule, but opened the door after the car had stopped as the rule required. The rule bears on the credibility of the witnesses in that the rule tends to show which version of the testimony is

probable and which is improbable. In other words, is it probable or improbable that the motorman would disobey the rule? The admissibility of the rule is not dependent upon the weight of the rule as a relevant fact. The rule is admissible if it tends "even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth." *Holmes v. Goldsmith, supra.*

In discussing the question whether the rule was admissible in evidence, counsel for the defendants in their brief imply that argument was made in behalf of the plaintiff to the jury, to the effect that "if the jury believed defendants opened the door before the car stopped, and allowed the plaintiff then to alight, defendants were negligent because they were violating their own rules." We do not find in the abstract any such argument in behalf of the plaintiff, or any part of the argument that was made in behalf of the plaintiff; and we have examined the record and have not found any such argument, or any part of the argument that was made in behalf of the plaintiff.

It is further contended by counsel for the defendants that reversible error was committed by the trial court in giving the following instruction at the request of the plaintiff:

"The court instructs the jury, that it is the duty of a common carrier of passengers to exercise the highest degree of care reasonably consistent with the mode of conveyance adopted and the practical operation of its road, to secure the safety of its passengers."

The objection urged by counsel for the defendants to the instruction is that it "declared the duty of a carrier much more broadly than any breach of duty that was alleged in the declaration"; that by the instruction the jury were told that the carrier was under a duty to exercise the highest degree of care in every respect to secure the safety of its passengers, "and that, therefore, the carrier would be liable for any breach of duty to secure the safety of its passengers,

regardless of whether that breach was alleged or not.''
We think that the objection is without merit. The
declaration alleges that the plaintiff was a passenger
upon the car of the defendants, and that he was in-
jured by reason of the negligence of the defendants.
The instruction correctly states, as a matter of law,
the degree of care that the defendants owed to the
plaintiff as a passenger. The instruction has been
approved by the Supreme Court. *Chicago City Ry.
Co. v. Smith*, 226 Ill. 178, 182; *Hatcher v. Quincy
Horse Ry. & Carrying Co.*, 272 Ill. 347, 349.

For the reasons stated in the opinion the judgment
of the trial court is affirmed.

*Affirmed.*

MATCHETT, P. J., concurs.

MR. JUSTICE McSURELY dissenting. Plaintiff was
the foremost of three or more passengers alighting
from the front platform, and it is hardly credible that
the motorman would start the car before the first man
had time to alight. The jury must have been confused
and diverted from the single issue by the evidence and
argument relating to the rules about opening and
closing the doors;—this was a kind of red herring.