## KIRVEN v. VIRGINIA-CAROLINA CHEMICAL CO.

(Circuit Court of Appeals, Fourth Circuit. May 4, 1906.)

No. 632.

1. COURTS—JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP.

The original beneficial owner may sue in a federal court on a note, although the nominal payee by reason of his citizenship would not have such right.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 868.

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

2. SAME—OBJECTION TO JURISDICTION—MODE OF TRYING ISSUE.

An objection to the jurisdiction of a federal court, where dependent on a question of fact, may be taken by answer, and the question of fact submitted to the jury, but such issue is an independent one, and should not be submitted with the other issues in the case to be determined by a general verdict.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 147, 152, 818.]

3. EVIDENCE—ADMISSIONS—STATEMENTS IN PLEADING.

Statements made in a complaint filed by a corporation and verified by its attorney, which was withdrawn before appearance by defendant and a new complaint filed, are not admissible as admissions by the corporation against its interest.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 719.]

4. CORPORATIONS—FOREIGN CORPORATIONS—VALIDITY OF CONTRACTS.

The failure of a foreign corporation to comply with the requirements of a state statute, imposing certain conditions precedent to the right of such corporations to do business in the state, does not render its contracts wholly void, but only suspends its right to sue thereon until it does so comply.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 2540.]

5. SAME—RIGHT TO ENFORCE CONTRACT—FAILURE TO COMPLY WITH LOCAL STATUTE.

Plaintiff, a corporation of another state, sold and shipped goods to defendant, a citizen and resident of South Carolina, on an order taken subject to its approval by one acting as its local agent, who took a note for the purchase price payable in South Carolina. It was not shown that plaintiff ever made any other sale in the state. At the time of such sale plaintiff had not complied with the statute of South Carolina authorizing it to do business within the state, but it did so before bringing suit on the note. Held, that the fact of its prior noncompliance with the statute was not a bar to its recovery, because: (1) The contract of sale was not made in South Carolina; (2) the single transaction did not constitute "doing business" in the state within the meaning of the statute; (3) the subsequent compliance with the statute rendered the contract enforceable, even if not so originally; and (4) the contract, being for goods to be shipped from another state, to allow the statute to avoid it after its execution by plaintiff would contravene the interstate commerce clause of the federal Constitution.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 2526, 2545.]

In Error to the Circuit Court of the United States for the District of South Carolina, at Columbia.

A. T. Smythe (Smythe, Lee & Frost, on the brief), for plaintiff in error.

P. A. Wilcox (Mitchell & Smith, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and McDOWELL and DAYTON, District Judges.

DAYTON, District Judge. On April 11, 1903, the Virginia-Carolina Chemical Company filed its complaint in the Circuit Court of the United States for the District of South Carolina, against J. P. Kirven, in which it alleges itself to be a corporation under the laws of New Jersey and Kirven to be a resident and citizen of South Carolina; that on March 14, 1898, Kirven made his promissory note to the order of one S. M. McCall for $2,298, payable at any bank in Darlington, S. C.; that McCall, payee in said note, acted solely as agent for the plaintiff company and never had any beneficial interest in the note, but the same had always been and was the property of plaintiff; that the note had not been paid and had been lost since its execution. To this complaint Kirven for answer and defense set up: First, that the note had been executed to McCall, a citizen of South Carolina, for fertilizer purchased of him alone, and that the company's interest in it accrued solely by assignment from him, and therefore the court below had no jurisdiction to try the cause; second, that on the date of the execution of said note the chemical company, as a nonresident corporation, had not complied with the statutes of South Carolina imposing certain conditions upon such corporations precedent to doing business in that state, and therefore both contract and note were void. By way of counterclaim he further charged the company to owe him for 70 bales of cotton of his attached and appropriated by the company. On the 16th and 17th days of March, 1905, the action was tried before a jury, resulting in a verdict for plaintiff company, a motion to set aside this verdict overruled, and judgment for $911.07, balance due after allowing credits admitted to have accrued since the institution of the suit. During the trial exceptions were taken to rulings of the court refusing to direct a nonsuit, refusing to direct a verdict for defendant, refusing to admit certain testimony tendered, giving a certain instruction and refusing to give a certain other instruction to the jury, and overruling a motion to set aside the verdict and award a new trial, but all these different exceptions relate solely to the two substantial questions involved; the one of jurisdiction, the other the right of the nonresident plaintiff corporation to enforce the contract without having complied with the state statute.

As to the question of jurisdiction: It is to be noted that it is solely a question of fact, turning upon the original ownership of the note. It is earnestly insisted by counsel for Kirven that the evidence shows that the note was executed to McCall, the lien in support of it was executed to McCall; that the plaintiff in prior judicial proceedings claimed it as assignee of McCall; that McCall on the witness stand admitted having "a beneficial interest" in it still, in the way of commision due him for making sale of the fertilizer for which it was exe-

145 F.—19

cuted; and that the officers of plaintiff company failed to testify touching the matter, whereby a strong presumption arose against it. On the other hand, it is just as earnestly insisted that the evidence shows that the fertilizer for which the note was given was furnished alone by the company; that McCall could not and did not make the contract himself, but only after having ":conferred with his house" and by letter so notified Kirven; that it was shipped by the company direct to Kirven; that McCall's interest as commission was wholly an independent one existing by contract between the company and himself to be paid to him by it alone and to whom alone he could look for such payment; that Kirven in propria personam had made affidavit in a former proceeding that he had purchased this fertilizer from McCall, as agent for the Chemical Company, and had executed the note and lien to him as such agent and was resisting payment to the company on wholly different grounds, to wit, the worthlessness of the fertilizer itself. It is well settled that the original beneficial owner can sue in the federal courts upon a note, although an original but nominal payee, by reason of citizenship, could have no such right. Holmes v. Goldsmith, 147 U. S. 150, 13 Sup. Ct. 288, 37 L. Ed. 118; Superior City v. Ripley, 138 U. S. 93, 11 Sup. Ct. 288, 34 L. Ed. 914; Hoadley v. Day (C. C.) 128 Fed. 302.

This proposition of law is virtually conceded. It is therefore very clear, from the very diverse deductions drawn by opposing counsel from this evidence, which, we may say in passing, they are justified in so drawing, that this cause is peculiarly one where the verdict of the jury, upheld by the judgment of the trial judge, ought not to be disturbed touching this determination of fact, unless in its determination the judge withheld from the jury pertinent and proper testimony, or, by instruction to the jury, misled it touching the application of the law to the facts. Both these things Kirven's counsel insist the court did. It seems the chemical company by its attorneys had in November, 1898, filed in the state court a complaint against Kirven, in which it was alleged the note in controversy had been executed by Kirven to McCall and by the latter indorsed to the company. This complaint was sworn to, on behalf of the plaintiff company, by Dargan, one of its attorneys, but, before any appearance of any kind was made by Kirven to it, it was by order withdrawn and dismissed and was immediately followed by a complaint based upon the lien given to secure the note in which an affidavit was filed making the exact admissions, if such they were, in almost the identical words, and which affidavit was made by Dargan, the attorney. In our judgment, the court was clearly right in ruling out the first, and it is very doubtful if he was justified in admitting the second affidavit. It could be admitted only for the reason that it was relied on and not repudiated by the plaintiff in a case prosecuted by it. It was certainly not proper to admit, as an admission against interest, a complaint drawn and sworn to by its attorney, which likely its own officers had never seen, and which was immediately withdrawn and dismissed.

But it is insisted that the court instructed the jury that they should find for the plaintiff in case they believed "the note was given and

taken for the benefit of the Virginia-Carolina Chemical Company, and that McCall's commissions were payable by that company, and that he had to look to that company for the same and therefore had no right to hold the note or to sue on it," for "then the fact that he was entitled to commissions on the amount of the note would not deprive this court of its jurisdiction," and that there was no evidence at all showing or tending to show that McCall's commissions were payable by the company, and he had to look to the company for the same. This contention is not sustained by the facts. On the contrary, it seems to us that the very opposite is true. McCall distinctly says that he had an agreement with the company in writing, by letter, which gave him a commission on the sale, but did not provide that he should give his own note for the goods. Under such a statement, drawn out upon cross-examination, can we avoid the conclusion that the company ratified the sale made by McCall as its agent to Kirven, was not to hold him responsible, either as principal debtor or as guarantor, but was to take Kirven's note and, when it was paid, was to pay McCall a certain commission for making the sale based upon the amount involved? When it is remembered that, at the instance of defendant's counsel, the court gave a very strong instruction upon their theory to the converse of this proposition and with much less testimony in support of it, we cannot justify complaint on their part against the trial judge in giving this instruction for the plaintiff. While we, therefore, find no error in fact in the determination of this question of jurisdiction, we feel constrained to say that it is always error to submit an issue of fact as to jurisdiction, with other issues, to a jury and permit it to be determined with such other issues, by a general verdict for or against the plaintiff. Lack of jurisdiction is a defense in abatement of the prosecution of the action and not in bar of the right of action itself. In common-law pleading it must, at the earliest moment, be raised by plea in abatement, made in person and not by counsel, and, if to the writ, must give defendant the better writ, and, if to the court, must indicate the court having jurisdiction. The issue upon such plea, if the matter be of law, must be determined by the court, but, if of fact, may be submitted to a jury. In either case the trial of this issue must be an independent one, for the plain and obvious reason that the judgment upon it, if effective, cannot be a bar to the plaintiff's right, but simply one of dismissal without prejudice.

Prior to the Act of 1875, the common-law rules touching the necessity of a plea in abatement to the jurisdiction prevailed in the federal courts, and it was held that the filing of a plea to the merits was a waiver of such plea to the jurisdiction. Farmington v. Pillsbury, 114 U. S. 138, 143, 5 Sup. Ct. 807, 29 L. Ed. 114. It has since been held that "in its general scope this rule has not been altered by the act of 1875," but that this act "changed the rule so far as to allow the court at any time, without plea and without motion, to stop all further proceedings and dismiss the suit the moment a fraud on its jurisdiction was discovered." Hartog v. Memory, 116 U. S. 588, 590, 6 Sup. Ct. 521, 29 L. Ed. 725; Williams v. Nottawa, 104 U. S. 209, 211, 26 L. Ed. 719. Thus while in practical effect this act of 1875 has extended

the right of the court to settle the question of its own jurisdiction and, to an extent, limited the right of a jury to pass upon that question when one of fact, it has by no means, when such question is submitted to a jury, destroyed the original methods by which it should be so submitted; and especially, under no form of pleadings, has it done away with the requirement that it shall be tried as an independent issue. This is true simply because the absolute necessity for it being so tried remains. As stated in Ashley v. Board, 8 C. C. A. 455, 468, 60 Fed. 55, 68:

"It is clear that such a question is an independent one, and cannot properly be confused with the issue on the merits; otherwise, it could not be determined from the verdict whether it was founded on a question of jurisdiction, or of the cause of action."

See, also, Terry v. Davy, 46 C. C. A. 141, 143, 107 Fed. 50, 52, where this principle is affirmed.

As to the question of the plaintiff corporation's rights, under the laws of South Carolina, requiring foreign corporations to comply with certain conditions before doing business in the state, to enforce this contract: It is no longer an open question that a corporation, being solely a creature of law, can have no power beyond that of the law which gives it birth. It has no right to exist under other laws or in other states except by comity. Chief Justice Taney, in Bank v. Earle, 13 Pet. 519, 588, 10 L. Ed. 274, has thus expressed it:

"It is very true that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law, and by force of the law, and, where that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation and cannot migrate to another sovereignty."

By the comity existing between the states and with other countries, these corporations are permitted to do business in other states than their own, but always subject to the laws of the domestic state which has the power at any time to restrict their operations and even expel them from its limits. They are not "citizens" within the meaning of article 4, § 2, of the federal Constitution, entitling them "to all privileges and immunities" as such "in the several states," nor do they come under the protection of section 1 of the fourteenth amendment, prohibiting the abridgement of such privileges and immunities. Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357; Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566, 19 L. Ed. 1029; Bank v. Earle, 13 Pet. 519, 10 L. Ed. 274; Phila. Fire Ass'n v. New York, 119 U. S. 110, 7 Sup. Ct. 108, 30 L. Ed. 342; Pembina C. S. & M. Co. v. Penna., 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650; Blake v. McClung, 172 U. S. 239, 19 Sup. Ct. 165, 43 L. Ed. 432; Orient Ins. Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552.

But, while all this is true, a corporation not created under the laws of a state, or not doing business in that state under conditions that subject it to process from the courts of that state, is within the meaning of the provision of the fourteenth constitutional amendment, declaring that no state shall "deny to any person within its jurisdiction

the equal protection of the laws," as held in Blake v. McClung, 172 U. S. 239, 19 Sup. Ct. 165, 43 L. Ed. 432. Nor will such state statutes be permitted to interfere with the constitutional rights of Congress "to regulate commerce with foreign nations and among the several states." Interstate or foreign transportation is interstate or foreign commerce, within the meaning of this clause as held in a number of cases, such as: Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649; McCall v. California, 136 U. S. 104, 10 Sup. Ct. 881, 34 L. Ed. 392; Bowman v. C. & N. Ry. Co., 125 U. S. 465, 8 Sup. Ct. 689, 31 L. Ed. 700; Pickard v. Pullman S. Car Co., 117 U. S. 34, 6 Sup. Ct. 635, 29 L. Ed. 785.

It has further been held that sales of goods by a foreign corporation to a resident of a state, although made by a salesman or agent sent into the state, to be shipped to him in the state from another state, belong to the operations of interstate commerce and are not subject to these restrictive laws of the states. Caldwell v. North Carolina, 187 U. S. 622, 23 Sup. Ct. 229, 47 L. Ed. 336; Brennan v. Titusville, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719; Stoutenburg v. Hennick, 129 U. S. 141, 9 Sup. Ct. 256, 32 L. Ed. 637; Robbins v. Shelby County, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137. Also, even though the business is done by the foreign corporation through an agent or firm resident in the state, and notes are given in settlement in the state and payable in the state. Kessler v. Perilloux (C. C.) 127 Fed. 1011; Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347; Davis, etc., Mfg. Co. v. Dix (C. C.) 64 Fed. 406. It has, however, been held that this interstate commerce clause does not apply to foreign corporations maintaining continuously an agency in a state from which orders are solicited and the goods are delivered to purchasers. Diamond Glue Co. v. U. S. Glue Co., 187 U. S. 611, 23 Sup. Ct. 206, 47 L. Ed. 328.

In construing the effect of these statutes in given cases, it has become frequently necessary for the courts to define what constitutes a "doing, transacting or carrying on a business," and, while there is some conflict, the great weight of authority is to the effect that isolated transactions, especially commercial, between foreign corporations and a citizen of the state, do not constitute a "doing, transacting or carrying on a business," within the meaning of such statutes using these terms. It has so been held by the courts of Alabama, Arkansas, Colorado, Illinois, Iowa, Kansas, Missouri, New Jersey, New York, Oregon, Pennsylvania, Tennessee, Texas, Washington, Wisconsin, and by the federal courts in such cases as Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Frawley v. Penna. Casualty Co. (C. C.) 124 Fed. 259; Oakland Sugar Co. v. Wolf, 118 Fed. 239, 55 C. C. A. 93. Among such instances of single transactions not constituting a "doing of business," within the meaning of the statutes, are the making of a single sale or contract of goods to a citizen and the taking of a mortgage in the state to secure payment therefor. Ware v. Hamilton, 92 Ala. 145, 9 South. 136; Florsheim v. Lester, 60 Ark. 120, 29 S. W. 34, 27 L. R. A. 505, 46 Am. St. Rep. 165; Col. Iron

Works v. S. G. Mining Co., 15 Colo. 499, 25 Pac. 325, 22 Am. St. Rep. 433; Dela. Canal Co. v. Mahlenbrock, 63 N. J. Law, 281, 43 Atl. 978, 45 L. R. A. 538; Penn. Collieries Co. v. McKeever (Sup.) 87 N. Y. Supp. 869; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Ammons v. Brunswick (Ind. T.) 82 S. W. 937. And the taking of notes in the state, for goods sold or a debt contracted in another state, and the suing thereon in the state, does not constitute such "doing of business." Creteau v. Foote (Sup.) 57 N. Y. Supp. 1103; Lumber Co. v. Holbert (Sup.) 39 N. Y. Supp. 432; Fuller Mfg. Co. v. Foster, 4 Dak. 329, 30 N. W. 166. And these statutes cannot effect contracts made by a citizen outside of his state with a foreign corporation, as, for instance, where an order is sent by the citizen for goods to the foreign corporation, or where such order is taken by a local agent, subject to the approval of the corporation, and is approved by the corporation outside the state, and the goods are shipped from outside the state by it to the purchaser in the state. In addition to the cases we have heretofore cited to this effect are Lumber Co. v. Chappell, 184 Ill. 539, 56 N. E. 794; Cordage Co. v. Mosher, 114 Mich. 64, 72 N. W. 117; Plow Co. v. Peterson, 93 Minn. 356, 101 N. W. 616; Peirce Co. v. Siegle Gas Fixture Co., 60 Mo. App. 148; and numerous cases in New York, New Jersey, Pennsylvania, Ohio, Tennessee, and Texas collected under note in 19 Cyc. 1277.

There is very great conflict in the decisions of the state courts construing the effect of the failure of foreign corporations to comply with these laws. Numerous cases in the states of Alabama, Colorado, Illinois, Indiana, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Tennessee, Texas, Utah, Vermont, and Wisconsin hold that such failure to comply renders the contracts of foreign corporations absolutely void and unenforceable, and especially so where no criminal penalty attaches by the terms of the statute. This harsh doctrine naturally shocks the conscience. It virtually encourages the individual citizen to be dishonest and repudiate his obligations, and that, too, where he has reaped the full fruits and benefits of the contract. Very naturally, and rightly, the courts have sought to avoid the consequences of such vicious legislation and the moral turpitude its strict enforcement involves. We therefore find many other cases in the states of Arkansas, Colorado, Idaho, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Missouri, Montana, New Hampshire, North Dakota, Ohio, Rhode Island, South Dakota, Washington, and West Virginia holding that such contracts are not void or unenforceable, but that foreign corporations which have failed to comply are nevertheless permitted to sue upon them. Some of these decisions are based upon the superior claim of the law of comity, others upon the assumption that the criminal penalty provided by the statutes is exclusive of all civil forfeiture of the contract. Other cases in Kentucky, North Dakota, Pennsylvania, South Dakota, and Washington hold that, where a party has entered into a contract with a foreign corporation and has received the benefit thereof, he is estopped

from setting up the failure to comply with these statutes by the corporation, for the purpose of avoiding his liability on the contract. Still other cases hold that the failure to comply with these statutes does not render its contracts wholly void, but only operates to suspend the right of the defaulting corporation to sue until it does comply. See 19 Cyc. pp. 1289–1300, and notes; and 12 Cent. Dig. tit. "Corporations." §§ 2536–2543, where these different classes of decisions are collected.

It seems to us that the position last above referred to, holding the contract good, but suspending the remedy, is the reasonable and honest one to take. It may be admitted that some practical protection is afforded to the private citizen of a state by these statutes, in that they tend to keep out irresponsible foreign corporations seeking to impose upon such citizens; therefore it may well be demanded of foreign corporations that they shall carefully comply with these statutory conditions, and, in case they do not, the criminal penalty be enforced and the civil right to sue be suspended. But surely this is going far enough, for practically, under modern conditions, the largest proportion of the commercial and other business transactions occurring are carried on under corporate franchises, and busy corporations, like busy individuals, may forget, or overlook to comply, or make mistakes in compliance with these conditions—a failure not malum in se, but simply malum prohibitum. On the other hand, for individuals to repudiate the obligations of honest contracts of which they have derived the benefit involves moral turpitude of the gravest character, and neither Legislatures nor courts can afford to encourage them in so doing. The law should protect its citizens but, by such protection, should not teach them to be dishonest.

Without continuing the discussion further, it is only necessary for us, applying the principles we have set forth, to say that this defense in this case must fail for several reasons.

First. Because, looking at the evidence in the light most favorable to the appellee corporation, which we must do by reason of its having the sanction of the jury's verdict and the lower court's judgment, it seems clear to us the real contract in the case was not made in South Carolina, but in Richmond, Va. McCall, it is true, as quasi agent, did negotiate it with Kirven conditionally, but only conditionally. He says in his testimony:

"I made a conditional trade with him, that is, that I was to sell him so much goods, provided I could arrange with the Virginia-Carolina Chemical Company and S. W. Travers at Richmond, if I could arrange with the company, and I made him those prices, but I was to write him from Mayesville after I went back and conferred with these people to see if I could make arrangements to sell him the goods, and I did write them and did make the arrangement and sold him so much goods, as the agent for this company."

It is clear from this testimony, and from the copy of the letter of notification to Kirven which he produces in substantiation of it, that he had no power himself to contract; that the contracts, based upon his negotiation, had, in fact, to be ratified and made by the company or its agent at Richmond, Va., and was so made and approved there in legal effect. It is not disputed that the goods were shipped direct to

Kirven by the company. Kirven expressly so states in his affidavit. It was therefore a case of a contract made by a citizen outside of his state, that is, not in South Carolina, but in Virginia, by and through an order taken by an agent, subject to be approved and complied with by the corporation in Virginia, and therefore not subject to the statutory provisions of South Carolina relied on, as held by the cases we have herein cited.

Second. There was no attempt to show by evidence any other sales or acts tending to establish the fact that this corporation at the time was "doing business," in South Carolina, and we must presume, from the absence of such testimony, that no other such sales or acts could be shown. This, therefore, even if our first reason were not sound, must be held an isolated commercial transaction such as would not constitute a "doing of business" within the meaning of the statute, under the authorities we have cited.

Third. It is admitted that, after the contract was made, but long before this suit was brought, this corporation did comply with the South Carolina statute, thereby fully meeting the true and honest rule, that we approve, that such contracts are not void, but the right to enforce them is suspended until compliance with the statute is made.

Finally. This contract was made for fertilizer, by order through McCall, agent, at Richmond, Va., from which latter state the goods were shipped by the corporation direct to Kirven in South Carolina and received by him, and to allow a statute of this kind to void the contract would contravene the interstate commerce clause of the federal Constitution, as held by the cases hereinbefore cited.

We therefore see no error in the judgment of the court below, and the same is affirmed.

PRITCHARD, Circuit Judge, concurs fully in this opinion, and McDOWELL, District Judge, concurs in the conclusions reached.