BALTIMORE TRUST CO. v. SCREVEN COUNTY et al.

MERCANTILE TRUST & DEPOSIT CO. OF BALTIMORE v. SAME.

(District Court, S. D. Georgia.   December 14, 1916.)

COURTS ☞312(5)—JURISDICTION OF FEDERAL COURTS—SUIT BY ASSIGNEE.

The provision of Judicial Code (Act March 3, 1911, c. 231) § 24(1), 36 Stat. 1091 (Comp. St. 1913, § 991 [1]) that, with certain exceptions, no District Court shall have cognizance of any suit to recover upon any promissory note in favor of any assignee or subsequent holder, unless such suit might have been prosecuted in such court if no assignment had been made, does not apply to the indorsement and transfer by a payee of notes which were made to him merely that he might, as agent for the maker, negotiate them with third persons, and who never had any beneficial interest in the notes, nor right of action thereon.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 871; Dec. Dig. ☞312(5).]

At Law.   Actions by the Baltimore Trust Company and by the Mercantile Trust & Deposit Company of Baltimore against the County of Screven and others.   On demurrers and motions to dismiss for want of jurisdiction.   Motions overruled.

O'Byrne, Hartridge & Wright, of Savannah, Ga., for plaintiffs.

John C. Hollingsworth, of Sylvania, Ga., and Anderson, Cann, Cann & Walsh, of Savannah, Ga., for defendant Screven County.

Saussy & Saussy, of Savannah, Ga., for other defendants.

LAMBDIN, District Judge.   The Baltimore Trust Company, a corporation and citizen of the state of Maryland, filed a suit in this court against the county of Screven, a corporation and one of the counties of the state of Georgia, as maker, and 15 citizens of said county, as guarantors, upon three notes for $10,000 each; and the Mercantile Trust & Deposit Company of Baltimore, a corporation and citizen of the state of Maryland, filed a similar suit against said county of Screven, as maker, and 14 citizens of said county, as guarantors, on a note for $10,000.   The Citizens' & Screven County Bank, a Georgia corporation, was the payee and indorser of all these notes.   The defendants in each of the causes duly filed their demurrers and motions to dismiss said suits for the want of jurisdiction.   Thereupon the plaintiffs filed an amendment to their respective petitions, in which the following allegation was made:

"That the payee and transferror of said notes, to wit, the Citizens' & Screven County Bank, at the times herein mentioned, was and still is a corporation created and existing under the laws of Georgia, having its principal place of business in the county of Screven, state of Georgia; that it, the said Citizens' & Screven County Bank, at the time said notes were made, undertook to negotiate the same with petitioner; that said Citizens' & Screven County Bank, at the time when said notes were delivered to it by the county of Screven, paid

no consideration for said notes, and gave no credit to said county of Screven for the same, and never at any time discounted the same or advanced any money upon the same; that said notes were negotiated by said Citizens' & Screven County Bank with your petitioner for the sole benefit of said county of Screven; and that said Citizens' & Screven County Bank never has had any beneficial interest in the said notes, but the beneficial owner of the said notes was and still is this petitioner."

Upon the filing of said amendments, the defendants renewed their demurrers and motions to dismiss said suits for the want of jurisdiction, insisting that the District Court of the United States had no jurisdiction, but that jurisdiction was exclusively in the state court, because it appeared from the face of the petitions as amended that the original payee of the notes in question, which assigned same to the plaintiffs, to wit, the Citizens' & Screven County Bank, was a corporation organized and existing under the laws of the state of Georgia and a citizen of this state, and that, inasmuch as said bank could not have brought suit on said notes in the United States court for want of diversity of citizenship, the assignees of the bank could not bring suit in this court. The defendants base their motions upon the latter part of the first division of section 24 of the Judicial Code, which is as follows:

"No District Court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made."

This limitation on the jurisdiction of the United States courts has with some changes been in continuous force since the Judiciary Act of 1789. The history of this provision is set forth in the opinion of the Supreme Court of the United States in the case of New Orleans v. Quinlan, 173 U. S. 191, 19 Sup. Ct. 329, 43 L. Ed. 664; the three acts governing the matter before the enactment of the new Judicial Code being section 11 of the Judiciary Act of 1789, the act of March 3, 1875, and the act of March 3, 1887, as corrected by the act of August 13, 1888. The purpose of this provision of the law seems to have been twofold: First, to narrow the jurisdiction of the District Court, as granted in the immediately preceding portion of the first subdivision of section 24 of the Judicial Code, over suits between citizens of different states and between citizens of a state and foreign states, citizens, or subjects; and, second, to prevent the creation of jurisdiction in the District Courts by assignment made for the purpose of bringing about an apparent diversity of citizenship. Under the provisions of the law above quoted an assignee is not allowed to bring a suit in the District Court of the United States, unless such suit might have been prosecuted in such court if no assignment had been made, and the exceptions permitting the assignee to bring a suit in this court are: First, suits upon foreign bills of exchange; second, suits upon choses in action made by a corporation payable to bearer; and, third, suits that might have been prosecuted in the District Court if no assignment had been made.

The defendants contend that the notes were made in the first instance to the Citizens' & Screven County Bank, a citizen of Georgia, and that the Baltimore banks derived title to these notes by assignment from the Georgia bank, and that, since the Georgia bank cannot invoke the jurisdiction of the United States court, its assignees, under the plain provisions of the law governing the matter, cannot do so. The Baltimore banks, however, contend, on the other hand, that the Georgia bank was only a nominal party, and not a real party, to the notes; that the notes were made to the Georgia bank, so that it could negotiate same for the county of Screven; that the Georgia bank did not discount the notes itself, or advance any money upon them, or have any beneficial interest in them whatever, but that it merely acted as agent for the county of Screven in the matter, and negotiated the notes for the sole benefit of the county.

There is no direct adjudication upon the precise point here involved by the Supreme Court of the United States. The court, however, is of the opinion that the point is ruled in principle in favor of the plaintiffs by the United States Supreme Court in the case of Holmes v. Goldsmith, in 147 U. S. 150, 13 Sup. Ct. 288, 37 L. Ed. 118. In that case the makers of a promissory note and the payee were citizens of the same state, and the makers signed it entirely for the benefit and accommodation of the payee, who indorsed the note to a citizen of another state, who paid him full consideration for same. The Supreme Court in that case held that the Circuit Court of the United States had jurisdiction, notwithstanding the provision of Act Aug. 13, 1888, 25 Stat. 433, 434, c. 866, now embodied in the above-quoted provision of the twenty-fourth section of the Judicial Code. The Supreme Court in that case held that the true relation of the parties to a written instrument may always be shown by parol evidence, and that the true meaning of the limitation in question upon the jurisdiction of the United States court was not violated by permitting the plaintiffs in that case to "show that, notwithstanding the terms of the note, the payee was really a maker or original promisor, and did not by his indorsement assign or transfer any right of action held by him against the accommodation makers." Mr. Justice Shiras, in delivering the opinion of the court, stated that "the purpose of the restriction as to suits by assignees was to prevent the making of assignments of choses in action for the purpose of giving jurisdiction to the federal court," and that the language of the statute is to be interpreted in accordance with the purpose to be effected and the mischief to be prevented. Mr. Justice Shiras went on to quote the language of Chief Justice Chase in the case of Bushnell v. Kennedy, 9 Wall. 387, 391, 19 L. Ed. 736, as follows:

"It may be observed that the denial of jurisdiction of suits by assignees has never been taken in an absolutely literal sense. It has been held that suits upon notes payable to a particular individual or to bearer may be maintained by the holder, without any allegation of citizenship of the original payee, though it is not to be doubted that the holder's title to the note could only be derived through transfer or assignment. So, too, it has been decided, where the assignment was by will, that the restriction is not applicable to the representative of the decedent. And it has also been determined that the assignee of a

chose in action may maintain a suit in the Circuit Court to recover possession of the specific thing, or damages for its wrongful caption or detention, though the court would have no jurisdiction of the suit if brought by the assignors."

As above stated, I think that the decision of the Supreme Court in this case in principle controls the cases at bar. Under the allegations of the petitions as amended, which must for the purpose of these motions be accepted as true, the payee was only a nominal party to the notes. It had no beneficial interest whatever in same, but merely acted as agent for the maker in negotiating these notes to the Baltimore banks; the payee had no right of action on these notes itself, but merely acted as an intermediary between the county of Screven and the Baltimore banks, which furnished the money to the county, and these Baltimore banks were thus the first real owners of the notes in question respectively. It would seem, also, that this same principle is recognized by the Supreme Court of the United States in the case of Blair v. City of Chicago, 201 U. S. 400, at page 447, 26 Sup. Ct. 427, 50 L. Ed. 801.

The Circuit Court of Appeals of the Fourth Circuit had the identical question before it in the case of Kirven v. Virginia-Carolina Chemical Company, 145 Fed. 288, 76 C. C. A. 172, 7 Ann. Cas. 219, in which that court, citing and following the case of Holmes v. Goldsmith, supra, made the following statement:

"It is well settled that the original beneficial owner can sue in the federal courts upon a note, although an original, but nominal, payee, by reason of citizenship, could have no such right."

The Circuit Court of the Northern District of Iowa had the same question before it in the case of Wachusett National Bank v. Sioux City Stove Works (C. C.) 56 Fed. 321, and that court, citing the case of Holmes v. Goldsmith, supra, held that the provision of the federal statute in question, limiting the jurisdiction of the United States courts, "does not apply to the indorsement and transfer by the payee of notes which were made to him merely that he might, as agent of the maker, raise money for the maker by negotiating them with third persons." In that case the Sioux City Stove Works, a corporation of Iowa, executed its notes to the Union Loan & Trust Company, a corporation of the same state, and the trust company negotiated the notes to the Wachusett National Bank, a corporation of the state of Massachusetts. Judge Shiras held that the District Court of the United States for the Northern District of Iowa had jurisdiction of this suit. As the language used by Judge Shiras is peculiarly applicable to the case at bar, I make the following quotation from his opinion in that case:

"From the averments of fact contained in the petition, and which are admitted by the demurrer, it appears that the Union Loan & Trust Company never held any cause of action, evidenced by the notes sued on, against the defendant company. There never was a time when the trust company could have maintained an action on the notes against the maker thereof, for it never advanced any money thereon, nor did it ever agree or promise so to do, nor were the notes executed as evidence of an indebtedness arising out of any past transactions. The facts show that the trust company was only a nominal payee, and the delivery of the notes to it did not create any indebtedness on part of

the defendant, nor vest in the trust company a right of action against the defendant. The notes were delivered to the trust company, not as evidence of an existing debt, but for the purpose of having the trust company negotiate the same with third parties, and if the trust company had failed to negotiate the same the notes would not have represented any actual indebtedness on part of the defendant, nor could the trust company have maintained an action thereon. It was the payment of the money by the Wachusett Bank that created a right of action against the defendant, but this right of action never belonged to the trust company, and did not pass by assignment from it to the plaintiff bank."

As opposed to the above-stated views, counsel for the defendants cite the case of State National Bank of Denison v. Eureka Springs Water Company et al., 174 Fed. 827, decided by the Circuit Court of the Western District of Arkansas on November 5, 1909. The facts stated in that case are somewhat similar to the facts in the cases at bar, and that case may therefore be a physical precedent in favor of the contentions of the defendants in this case, yet the precise question here involved was not discussed by the court in that case. The court in that case based its decision upon the plain provision of the law that, inasmuch as the maker and the payee of the notes resided in the same state, an assignee could not invoke the jurisdiction of the United States court in a suit upon the notes, and the distinction pointed out in the case of Holmes v. Goldsmith, and in the other cases above mentioned, was not adverted to. The question as to whether this provision of the law was changed by the fact that the payee was a nominal party and had no beneficial interest in the notes was not discussed by the court. Other cases cited by counsel for the defendants are the cases of Small v. King (1850) Fed. Cas. No. 12,960, Noell v. Mitchell (1869) Fed. Cas. No. 10,287, and Shuford v. Cain (1869) Fed. Cas. No. 12,823. These cases, however, were decided before the case of Holmes v. Goldsmith, supra, which was decided in 1893, and therefore must yield to the reasoning of the Supreme Court in that case.

Another case cited by counsel for defendants is the case of Kolze v. Hoadley, 200 U. S. 76, 26 Sup. Ct. 220, 50 L. Ed. 377. Yet I think that the last-named case is clearly distinguishable from the case of Holmes v. Goldsmith, or the case at bar. It appears in the Hoadley Case that one Kolze sold and conveyed certain real estate to one Day, and that Day executed his notes for the purchase price of same, and to secure such notes executed three trust deeds to one Stade, as trustee, covering the real estate in question. Kolz thereupon intrusted the notes and trust deeds to Stade, nephew, in whom he seemed to have great confidence; the notes being executed by Day to his own order and by him indorsed in blank. Stade took the notes and trust deeds securing the same and pledged them to one Hoadley as collateral security to his own notes, upon which Hoadley advanced a large sum of money. Afterwards Day reconveyed the premises to Kolze, and Stade, as trustee, fraudulently released the three trust deeds on the property. Afterwards Kolze and his wife conveyed the premises to their daughter, and the daughter mortgaged the premises to some one else. Subsequently Stade failed to pay his notes to Hoadley, and the notes and trust deeds of Day were sold in accord-

ance with the terms of the collateral note, and were all bought in by Hoadley. Hoadley filed a bill in the Circuit Court of the United States for the Northern District of Illinois, praying that the release deed executed by Stade to Kolze be declared fraudulent and void, that the rights of all the defendants be declared subject to those of plaintiff under the notes and deeds held by her, that an accounting be had and the defendants be decreed to pay whatever was due under the notes and trust deeds, and that the premises be sold, etc. Judge Kohlsaat, in the Circuit Court of the United States for the Northern District of Illinois, in 128 Fed. 302, held that the United States court had jurisdiction of this case. The Supreme Court of the United States reversed the court below, and held that the case should have been dismissed for the want of jurisdiction. Mr. Justice Brown, speaking for the court (200 U. S. at page 84, 26 Sup. Ct. 222, 50 L. Ed. 377), said:

"The suit is in substance a bill to foreclose the trust deeds and to remove the release as a cloud upon the title"

—and distinguished that case from the case of Holmes v. Goldsmith. In the Hoadley Case there were no accommodation makers or indorsers, or nominal parties. Day bought real estate from Kolze, and gave his notes for same, and executed trust deeds to secure the notes. Kolze intrusted these notes and trust deeds to Stade, who violated his trust and pledged them to Hoadley for a loan to himself individually. Hoadley, on the nonpayment of the note, sold the notes and trust deeds in accordance with the terms of the collateral note and bought same in. The deeds of trust were made to Stade as trustee. Hoadley became the owner of the notes in question and of the deeds of trust by virtue of assignments executed by Stade. Stade did not attempt to make these transfers and assignments for the benefit of Day, the maker of the notes, or even for the benefit of Kolze, but in violation of his trust assigned same as security for his own debt to Hoadley. None of the parties here in this matter were nominal parties, but they were all real parties at interest, and the title taken by Hoadley was derived entirely by an assignment of notes and deeds which had become complete contracts before she became the owner of same through such assignment. I think, therefore, that the case is clearly distinguishable from those at bar.

The foregoing reasoning is applicable, not only to the contentions of the county of Screven, the maker of the notes in question, but also to the contentions of the guarantors, whose guaranty followed the indorsement made on the notes by the Citizens' & Screven County Bank. I think it is plainly inferable, from the allegations of the petitions as amended and from the face of the notes themselves, that these notes were not valid obligations in the hands of the Georgia bank, but first obtained their vitality when they came into the hands of the Baltimore banks, as contemplated by all the parties to the notes. The guaranty signed by the citizens of the county were evidently for the benefit of the Baltimore banks as the original beneficial holders of the notes. According to the petitions as amended, the bank and the county of Screven and the guarantors prepared these

notes in order that they might be negotiated and the money obtained thereon for the county, and the transaction was not complete until the notes went into the hands of the Baltimore banks. These banks, therefore, became the first real owners of the notes, and a right of action on the notes first arose when the plaintiffs took same. In this view of the matter, the guarantors stand in the same position as the maker of the notes.

The court is therefore of the opinion that the suits were properly brought in the United States court, and the motions to dismiss same for the want of jurisdiction will be overruled.

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes