### SKELLY OIL CO..v. CASSIDY.

(Circuit Court of Appeals, Eighth Circuit. April 21, 1924.)

#### No. 6344.

1. **Courts ⟝312(1)—Beneficial owner may sue in federal court after assignment from nominal party, though nominal party could not have done so.**

That original party, who entered into contract in own name for use and benefit of another, could not maintain action thereon in United States courts by reason of citizenship, does not preclude beneficial owner, under Judicial Code, § 24 (Comp. St. § 991), from suing in such courts after assignment from nominal party.

2. **Courts ⟝312(1)—Provision of Judicial Code as to jurisdiction in action by assignee on assigned chose in action inapplicable to action by beneficial owner, taking assignment from nominal party.**

Judicial Code, § 24 (Comp. St. § 991), depriving assignee from suing in federal courts on chose in action, unless suit might have been brought by

⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

assignor, *held* inapplicable to action on contract by beneficial owner after assignment from nominal party, who entered into contract in own name for benefit of such beneficial owner.

**3. Mines and minerals ⟺109—Well-drilling contract construed.**

Contract between owner of lease and well-drilling contractor *held* to relieve owner from personal liability for advances made in his behalf by contractor, whether in drilling of first or subsequent wells, and to entitle contractor to reimbursement for all such advances from owner's share, if any, of all the oil and gas produced.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by the Skelly Oil Company against Alice M. Cassidy, administratrix of the estate of M. Cassidy, deceased. Judgment for defendant, and plaintiff brings error. Affirmed.

W. P. Z. German, of Tulsa, Okl. (A. F. Molony, of Oklahoma City, Okl., and Cliff V. Peery, of Tulsa, Okl., on the brief), for plaintiff in error.

John J. Hildreth, of Guthrie, Okl. (Sam Hooker, of Oklahoma City, Okl., on the brief), for defendant in error.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This action was brought by the Skelly Oil Company, a corporation, plaintiff in error, and hereinafter called plaintiff, against Alice M. Cassidy, as administratrix of the estate of M. Cassidy, deceased, defendant in error, and hereinafter called defendant, to recover under a contract entered into between W. G. Skelly and M. Cassidy one-half of the cost and expense incurred by the plaintiff in the drilling and operation of an oil well.

Plaintiff by its first amended complaint alleged the following facts: That plaintiff is a resident and citizen of the state of Delaware and that the defendant is a resident and citizen of Logan county, in the Western district of Oklahoma. That Cassidy died December 11, 1920, and that on December 31, 1920, defendant was appointed and duly qualified as the administratrix of his estate. That on July 18, 1918, the state of Oklahoma sold and thereupon made, executed and delivered to Cassidy an oil and gas lease, dated July 16, 1918, between the Commissioners of the Land Office of the state of Oklahoma as lessors and Cassidy as lessee, covering 240 acres of land in section 16, township 19 north, range 5 east, Payne county, Okl. That on October 17, 1919, Cassidy assigned to Skelly an undivided one-half interest in and to said lease, and that on the same date Cassidy and Skelly entered into the contract referred to above, a copy of which was attached to the complaint as an exhibit. The contract described the lease, recited the assignment of the one-half interest to Skelly, that Skelly as a consideration for said agreement had undertaken and agreed to complete a well on the leased premises according to the terms and conditions set out in the contract, and that it was understood Skelly should have control of the development and operation under said lease. The contract following the foregoing recitals reads as follows:

"Now, therefore, for and in consideration of the mutual covenants and agreements hereinafter contained, the parties hereto have stipulated and agreed as follows:

"1. Party of the second part [Skelly] covenants and agrees on or before December 1, 1919, to commence a well for oil or gas upon said premises on the south half of the southwest quarter of said section 16, at approximately two hundred (200') feet west of the middle of the east line thereof, and complete the same with reasonable diligence to a depth of the sand commonly known as the Ingalls sand found at approximately thirty-nine hundred (3,900) feet, unless oil or gas is found in commercial quantities at a lesser depth.

"2. It is stipulated and agreed that the entire expense of drilling and completing said well shall be advanced by party of the second part, and in the event the same proves to be a dry hole, the party of the first part [Cassidy] shall not be called upon to contribute any portion of the expense of said well, and all equipment used in said well, including the casing shall in that event belong to party of the second part, and party of the first part shall claim no interest therein.

"3. It is stipulated and agreed in the event oil or gas is produced on said lease, either from the first well or subsequent wells which may be drilled thereon, that all of the oil and 'gas which may be produced to the credit of the party of the first part shall be charged with one-half of all expenses of drilling, operating and equipping said lease, and party of the second part shall have a lien upon said oil or gas for the payment to him of any advances which he may have made on behalf of the party of the first part, including the expenses of drilling said first well.

"4. As a part of the consideration for the completion of said first well, it is understood and agreed that the party of the second part shall have the complete control and management of said lease and is authorized to purchase supplies therefor and do everything requisite or necessary in and about the prosecution of the production of oil or gas from said premises which may be necessary, or which may to him seem expedient.

"5. The terms and conditions of this contract shall be binding upon and shall inure to the benefit of the parties hereto, their heirs, personal representatives and assigns."

That Skelly, in executing said contract and taking said assignment, was acting as the agent of the plaintiff and held the same solely for its benefit and that on February 12, 1920, Skelly executed and delivered to the plaintiff a written assignment of the lease and contract. That the plaintiff in accordance with the terms and provisions of the contract in the month of November, 1919, commenced an oil and gas well on the land and prosecuted the same with due diligence until August, 1920, when it completed the same. That the well produced oil and gas in paying quantities. That plaintiff advanced all the necessary cost and expense of drilling said well and after completing same operated it and paid and advanced all of the cost and expense in the operation of the same. That the total amount expended up to the date of the death of Michael Cassidy amounted to $71,664.58. That plaintiff demanded payment from Cassidy during his lifetime of one-half of said cost and expense, and that Cassidy failed and refused to pay the same, and that it presented its claim to the defendant for allowance, and that she rejected the same.

To the first amended complaint the defendant filed an answer, in which she alleged: That the cause of action set out in the complaint was based on an assigned chose in action, that plaintiff's assignor Skelly and defendant were both residents and citizens of Oklahoma, and that the court therefore had no jurisdiction; that under the contract Cas-

sidy was not personally liable for any of the cost and expense of drilling and operating said oil and gas well; and that plaintiff failed to present its claim in time to the administratrix and it was therefore barred.

To the answer the plaintiff filed a reply which set up matters in avoidance of its failure to present the claim to the administratrix within the time required by law.

After the pleadings were made up, defendant filed a motion for judgment on the pleadings. The lower court sustained this motion and entered judgment for the defendant. From this judgment the plaintiff sued out a writ of error to this court.

[1, 2] The objection to the jurisdiction is not well taken. Skelly had no beneficial interest in the contract. He took it for the use and benefit of the plaintiff. The fact that the original party to a contract, who entered into the same in his own name for the use and benefit of another, could not maintain an action thereon in the United States courts by reason of citizenship, does not preclude the beneficial owner, under the provisions of section 24 of the Judicial Code (Comp. St. § 991), from suing thereon in the United States courts after an assignment from the nominal party to the beneficial owner. Kirven v. Virginia-Carolina Chemical Co. (C. C. A. 4) 145 Fed. 288, 76 C. C. A. 172, 7 Ann. Cas. 219; Holmes v. Goldsmith, 147 U. S. 150, 13 Sup. Ct. 288, 37 L. Ed. 118; Baltimore Trust Co. v. Screven County et al. (D. C.) 238 Fed. 834; Commercial Trust Co. of Hagerstown v. Laurens County (D. C.) 267.Fed. 901. Furthermore, the cause of action set up by the plaintiff is not based upon the contract as an assigned chose in action but upon performance of the contract by it and an indebtedness arising in its favor by reason of that performance. The liability or chose in action, if it accrued at all, accrued to the plaintiff and not to Skelly. Section 24 of the Judicial Code does not apply to the cause of action sought to be enforced by plaintiff. Oak Grove Const. Co. v. Jefferson County (C. C. A. 6) 219 Fed. 858, 135 C. C. A. 528; County of Cullman, Ala., v. Vincennes Bridge Co. (C. C. A. 5) 251 Fed. 473, 163 C. C. A. 467; Paige et al. v. Town of Rochester (C. C.) 137 Fed. 663; Power & Irrigation Co. of Clear Lake v. Capay Ditch Co. et al. (C. C. A. 9) 226 Fed. 634, 641, 141 C. C. A. 390.

The question of whether or not Cassidy was personally liable to the plaintiff for one-half of the cost and expense of drilling the oil and gas well depends upon a construction of the contract.

It is apparent that the parties were contracting with several contingencies in mind. If the first well had resulted in a dry hole and there had been no further development of the lease, it is clear Cassidy would not have been under any personal obligation to reimburse Skelly for one-half of the cost of the well, and there would have been no oil or gas upon which the provisions of paragraph 3 could operate as a lien. If the first well had resulted in a dry hole and subsequent wells had been drilled resulting in production, it is clear under the provisions of paragraph 3 Cassidy's one-half of the production would have been charged with one-half of all expenses of drilling, operating and equipping the lease, including the expenses of drilling the first well, and Skelly would have had a lien on Cassidy's share of the production for

the repayment of the advances made by him for Cassidy, including the expenses of drilling the first well. The first well having resulted in production, if subsequent wells had been drilled also resulting in production, then under the provisions of paragraph 3 Cassidy's one-half of the entire production would have been charged with one-half of all expenses of drilling, operating and equipping the lease, including the expenses of drilling the first well, and Skelly would have had a lien upon Cassidy's share of the production for the repayment of the advances made by him for Cassidy, including the expenses of drilling the first well.

Did the parties intend by this contract to make Cassidy personally liable for advances made in the drilling of the first well in the event it was a producer or in the drilling of subsequent wells regardless of whether they produced or not?

The contract clearly contemplated the commencement and completion of one well. In writing the provisions of paragraph 2 the parties were contracting solely with reference to the first well. They contemplated it might result in a dry hole and that Skelly was to advance all the cost and expense of drilling same. In Paragraph 2 they agreed in the event the first well should be a dry hole Cassidy would not be called upon to contribute any portion of the expense of the well, but that Skelly should retain the title to all of the equipment used in the well, including the casing. By this paragraph they fixed the respective rights and liabilities in the event the first well was a dry hole. When they came to write paragraph 3 the parties were thinking that either the first well or subsequent wells might result in production. There was no liability on the part of Skelly to advance money to drill more than the first well, but it is apparent they contemplated Skelly might advance the money to drill more wells. By this paragraph they were undertaking to fix the rights and liabilities of the parties in the event the first well or subsequent wells drilled at Skelly's option, should result in production, and they provided how Skelly would be reimbursed in the event production should result from either the first well or any subsequent well. They provided that one-half of all expense of drilling, operating, and equipping the lease, including the expense of drilling the first well, should be charged against Cassidy's share of the production, and gave Skelly a lien upon Cassidy's share to secure the payment of this charge. This provision evinced an intention that there should be no personal liability on the part of Cassidy to Skelly for advances, but that Skelly should be reimbursed out of Cassidy's one-half of the production.

If we construe the third paragraph as recognizing a personal liability of Cassidy to Skelly and creating a lien on Cassidy's one-half of the oil for the enforcement thereof as counsel for plaintiff contend, we then find it conflicting with the provisions of paragraph 2, because it gives a lien on Cassidy's one-half of the oil to reimburse Skelly for advances for drilling the first well, even though the first well should result in a dry hole, whereas, the parties unquestionably provided by paragraph two that if the first well should be a dry hole there would be no personal liability on the part of Cassidy. On the other hand, if we construe the third paragraph as making the sole provision under which Skelly

was to be reimbursed for advances by resorting to Cassidy's one-half of the production and relieving Cassidy from any personal liability, we can give full effect to the provisions of paragraph numbered 3 consistent in every particular with the provisions of paragraph numbered 2.

In other words, by construing the contract as last above stated, full effect may be given to all of its expressions in the event of any of the several contingencies contemplated by the parties, whereas, if the construction is given as contended for by plaintiff, in the event of a dry hole first and subsequent production, the provisions of paragraphs 2 and 3 are repugnant and irreconcilable.

It may be urged we have not taken into consideration the rights of the parties if two wells should be drilled and both should result in dry holes. Under the contract Skelly was obligated to advance the money for and drill the first well, but he was under no obligation to advance the money for a second well. If the first well had resulted in a dry hole Skelly would have been free to negotiate a new arrangement with Cassidy before proceeding with further development. He could have exercised any right which a co-owner of the lease might exercise. If he deemed it advisable he had the right under the contract to drill a second well and charge the expense of same and of the first well against the production, if any resulted, but he took the chance in so doing. Cassidy, having nothing to say as to the advisability of drilling the second well, would not be bound to contribute to the cost thereof except from production.

[3] It is our opinion the parties intended by their contract to relieve Cassidy from any personal liability for any advances made in his behalf by Skelly, whether in the drilling of the first or subsequent wells, and to give Skelly the right to reimbursement for all such advances from Cassidy's share, if any, of all the oil and gas produced.

The judgment is therefore affirmed.