## CURTIS et al. v. CLARENDON COUNTY.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2817.

Laurence Curtis, 2d, of Boston, Mass., and Augustine T. Smythe, of Charleston, S. C., for appellants.

Nath. B. Barnwell, of Charleston, S. C. (Barnwell & Black, of Charleston, S. C., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and McDOWELL, District Judge.

PARKER, Circuit Judge. Allen Curtis and others, partners trading as Curtis & Sanger, of Boston and New York, were plaintiffs in the court below, and the county of Clarendon, South Carolina, was defendant. We shall so refer to them here. The action was instituted to recover on four promissory notes, aggregating $34,177, executed by defendant. These notes were made payable to the Bank of Manning, of Manning, S. C., and were by it indorsed in blank without recourse. Plaintiffs alleged that they purchased them from the American Bank & Trust Company of Columbia, that that bank and the Bank of Manning were merely agents of defendant for the purpose of negotiating them, and owned no beneficial interest in them, and that the Bank of Manning was only the nominal payee. After hearing the evidence the learned District Judge held that, under subsection 1 of section 24 of the Judicial Code (28 USCA § 41(1), the court had no jurisdiction of the cause, and entered an order dismissing same. From this order, plaintiffs have appealed.

The facts bearing on the question of jurisdiction are as follows: In November, 1925, defendant's treasurer, a Miss Wilson, notified the Bank of Manning that the county would soon require a loan of $35,000, and suggested that the bank submit a bid for same. The bank did this, and its bid was accepted. Before submitting the bid, however, it took the matter up with the American Bank & Trust Company of Columbia, S. C., and arranged with that bank to handle the loan. The American Bank & Trust Company prepared the papers and forwarded them to the Bank of Manning, which, in turn, delivered them to Miss Wilson to be executed. She executed them on December 8, 1925, and delivered them to the Bank of Manning, which, after indorsing them in blank without recourse, forwarded them to the American Bank & Trust Company. The latter received them on the 9th and forwarded them to plaintiffs in New York. Plaintiffs received them on the 11th, deposited the amount thereof, with interest, to the credit of the American Bank & Trust Company in the Equitable Trust Company of New York, and wired the American Bank & Trust Company that this had been done. The American Bank & Trust Company, on December 12th, credited the Bank of Manning with the full amount of the proceeds, and the latter, on December 14th, credited defendant therewith, less a certain discount charged.

It is significant that, although the notes were made payable to the Bank of Manning, they were payable at the Equitable Trust Company's offices in the city of New York. It is also significant that no money was paid or credited to defendant at the time they were delivered to the Bank of Manning. On the contrary, it was expressly agreed that defendant should not receive anything until the Bank of Manning should be able to dispose of them and receive the money thereon. In this connection, the cashier of the Bank of Manning testified: "When she (the county treasurer) delivered the notes to the Bank of Manning, she delivered them with an agreement that the county was not to get any credit for them until the Bank of Manning got the money on them from some other source—from Columbia—from some other source." And Miss Wilson, the county treasurer, testified: "I understood, at the time I made the delivery of these notes to the Bank of Manning, that the Bank of Manning didn't have the money. They told me that the transaction wasn't going to be a complete and finished transaction until Bank of Manning did get the money from somewhere else and give it to me." The cashier of the American Bank & Trust Company testified that he was assisting the Bank of Manning "in getting the money," and that it was understood with the latter, when it forwarded the notes, that it was not to have credit for them until the American Bank & Trust Company should get the money on them from New York. Nowhere is there contradiction of any of this testimony, but, on the contrary, it is corroborated by the correspondence passing between the Manning and Columbia banks. The capital, surplus, and undivided profits of the Bank of Manning amounted to only $120,000, which made $18,000 the legal limit of its loans to any one person.

Defendant's plea to the jurisdiction is based upon the following provision of sec-

tion 24 of the Judicial Code, 28 USCA § 41 (1), viz.: "No District Court shall have cognizance of any suit * * * to recover upon any promissory note or other chose in action in favor of any assignee, * * * unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made."

We think, however, that this section of the statute is not applicable here, because the evidence clearly shows that both the Manning and Columbia banks were acting as agents for defendant in handling the notes sued on, having no beneficial interest therein; the Bank of Manning being a mere nominal payee. Under such circumstances, plaintiffs are not the assignees of the cause of action of either of the banks, for neither of them had any cause of action to assign, but plaintiffs are the first beneficial holders of the notes, and the first who were in position to maintain an action upon them. The rule applicable in such cases is clearly and tersely stated, with the supporting authorities, by Mr. Justice Sanford in the recent case of Citizens' Savings Bank v. Sexton, 264 U. S. 310, 313, 44 S. Ct. 338, 339 (68 L. Ed. 703), as follows:

"If, however, it is shown, upon allegation and proof, that the relation of the parties to a note is otherwise than appears from its terms, and that the plaintiff, although apparently assignee, is in reality the payee, the Code provision does not apply and his right to invoke the jurisdiction of the District Court is not restricted by the fact that the suit could not have been prosecuted by the nominal payee. Holmes v. Goldsmith, 147 U. S. 150, 159 [13 S. Ct. 288, 37 L. Ed. 118]. Such is the case where the nominal payee was merely the agent of the maker for the purpose of negotiating the note and had no beneficial interest therein or right of action thereon. Blair v. Chicago, 201 U. S. 400, 448 [26 S. Ct. 427, 50 L. Ed. 801]; Kirven v. Chemical Co. (C. C. A.) 145 F. 288, 290 [7 Ann. Cas. 219]; Wachusett Bank v. Stove Works (C. C.) 56 F. 321, 323; Baltimore Trust Co. v. Screven County (D. C.) 238 F. 834, 836; Commercial Trust Co. v. Laurens County (D. C.) 267 F. 901, 903."

In Holmes v. Goldsmith, cited by Mr. Justice Sanford, the statutory provision here relied on was held not to apply to a suit upon a note executed by accommodation makers to one who was a citizen of the same state and indorsed by him to plaintiff. In Kirven v. Virginia Carolina Chemical Co., a decision

of this court also cited by him, it was held to have no application in a suit on a note executed to plaintiff's agent, who was a citizen of the same state as the maker. The cases of Wachusett Bank v. Stove Works, Baltimore Trust Co. v. Screven County, and Commercial Trust Co. v. Laurens County, cited by Justice Sanford, to which might be added the later case of Skelly Oil Co. v. Cassidy (C. C. A. 8th) 298 F. 699, are directly in point on the proposition here involved, relating to suits on notes made payable to a local person or corporation who obtained money thereon for the maker or makers from a nonresident.

In one of these, the case of Wachusett National Bank v. Sioux City Stove Works, 56 F. 321, a decision by Judge Shiras in the Circuit Court for the Northern District of Iowa, it appeared that defendant executed a number of notes payable to the Union Loan & Trust Company and placed them in its hands to be negotiated, and that same were negotiated by it to plaintiff. In disposing of the contention that the court had no jurisdiction because of the statutory provision relied on here, Judge Shiras said:

"From the averments of the fact contained in the petition, and which are admitted by the demurrer, it appears that the Union Loan & Trust Company never held any cause of action, evidenced by the notes sued on, against the defendant company. There never was a time when the trust company could have maintained an action on the notes against the maker thereof, for it never advanced any money thereon, nor did it ever agree or promise so to do, nor were the notes executed as evidence of an indebtedness arising out of any past transactions. The facts show that the trust company was only a nominal payee, and the delivery of the notes to it did not create any indebtedness on the part of the defendant, nor vest in the trust company a right of action against the defendant. The notes were delivered to the trust company, not as evidence of an existing debt, but for the purpose of having the trust company negotiate the same with third parties, and if the trust company had failed to negotiate the same the notes would not have represented any actual indebtedness on part of the defendant, nor could the trust company have maintained an action thereon."

And later in the opinion he emphasized what we think lies at the foundation of the rule; i. e., that in a case such as this the indorsement does not assign to the purchaser of the notes the cause of action of the in-

dorser, for the very good reason that the indorser has had no cause of action to assign. Said he:

"By indorsing the notes, it did not assign any cause or right of action held by it, and therefore the transaction does not come within the purview of the statute, which is intended to prevent the acquisition of jurisdiction by the federal courts through the transfer of rights of action by parties who could not come into these courts to parties who possess the requisite citizenship. Under the facts averred in the petition, no cause or right of action against the defendant company arose upon the notes executed by it until the plaintiff bank advanced the money thereon, and the right of action then created never was vested in, or belonged to, the Union Loan & Trust Company."

This case, cited with approval by the Supreme Court in the Sexton Case, is directly in point. The Bank of Manning never held any cause of action against the defendant on the notes in controversy. There never was a time when it could have maintained an action on the note against the makers. It never advanced any money on them, and was not obligated to do so, until it could sell them to some other person. They were not executed as evidence of an existing debt, but in order that the payee might negotiate them. By indorsing them the Bank of Manning did not assign any cause of action which it held; for no cause of action arose on the notes until plaintiffs advanced the money thereon, which was after they had passed out of the possession of the Bank of Manning and come into the possession of plaintiffs, in whose favor the cause of action then arose.

We think that the learned judge below attached too much importance to the fact that the Bank of Manning submitted a bid for the loan which was accepted by the defendant. It is clear that the bank did not intend to lend the money itself, but merely to procure it for defendant. A loan in the amount required by defendant would have been, not only ultra vires, but illegal as well, as the parties must have known, and an agreement to make such loan would have been void, because contrary to law. But, whatever may have been understood in the inception of the negotiations, the important consideration is the agreement at the time the notes were delivered to the Bank of Manning. Was there a lending then by the bank, with the execution of the notes as evidence of an existing indebtedness, or were they executed and delivered to the bank in order that it might

get the money on them for defendant? There can be no question that the latter was the case; for the defendant was to get no money from them until they had been disposed of by the bank. If the latter had failed to dispose of them, defendant would not have been entitled to any money, and, of course, no cause of action would have arisen against the defendant.

Defendant's contention is that, although it knew that the Bank of Manning intended to sell the paper, it really borrowed the money from that bank and not from the purchaser of the paper. But, aside from the fact that the bank could not legally make so large a loan, it is clear that under the final agreement the bank was not bound to let defendant have the money on the notes until it had succeeded in selling them, and that, notwithstanding it had them in its possession, it could not have maintained a cause of action upon them. It held them, therefore, not as owner, but for the purpose of disposing of them, and when it indorsed them, which, significantly, was without recourse, the indorsement assigned no cause of action which it had, for it had no cause of action. The plaintiffs, therefore, are not in the position of assignees, and do not come within the terms of the statutory provision, and they certainly are not within its spirit. As the notes were payable to the order of the bank, it was necessary for the bank to indorse them, so that there might be no question about the right of the one who might advance the money on them to make collection; but this indorsement did not assign any cause of action on the notes, as no cause of action arose on them till plaintiffs advanced the money. Plaintiffs, therefore, are not assignees, but the first beneficial holders of the instruments, and, not being residents of the state of South Carolina, they are entitled to invoke the jurisdiction of the federal courts on the ground of diversity of citizenship.

■ The parties ask that we pass upon a number of questions bearing upon the merits which were developed by the evidence in the court below; but we have no power to do this. The judge below passed upon only one question, that of jurisdiction, and upon appeal that is the only question which we can review. What he might have done, had he decided in favor of jurisdiction, is a moot question. This court will not put itself in the position of saying that his action would have been either correct or erroneous, had he done something which he did not do. Interesting questions are presented by the evi-

dence, which may or may not arise upon another trial; but certainly we ought not and will not decide these questions, until they are properly before us on appeal from a ruling of the District Judge in which they are decided.

In dismissing the case for lack of jurisdiction, there was error, and the order of dismissal is accordingly reversed.

Reversed.